### PEOPLE *v.* MALLORY.

#### Decision of the Court.

1. Criminal Law—Moot Case—Misdemeanor—Service of Sentence —Parole Violation.

Service of misdemeanor jail sentence did not render moot the future appeal of such conviction, where the misdemeanor conviction was held to constitute a parole violation and defendant has been remanded to serve the remainder of a former sentence.

---

References for Points in Headnotes

[1, 6, 7, 13] 4 Am Jur 2d, Appeal and Error § 273.
   When criminal or contempt case becomes moot so as to preclude review by higher court.   87 L ed 1201.
   When criminal case becomes moot so as to preclude review of or attack on conviction or sentence—Federal cases.  1 L ed 2d 1876.
[2, 8] 21 Am Jur 2d, Criminal Law §§ 233, 323.
   Right of indigent defendant in criminal case to aid of State as regards new trial or appeal.  55 ALR2d 1072.
[3, 4]  20 Am Jur 2d, Courts § 68 *et seq.*
[5]  5 Am Jur 2d, Appeal and Error § 901 *et seq.*
[9, 10]  21 Am Jur 2d. Criminal Law § 397.
[11]  21 Am Jur 2d, Criminal Law § 18 *et seq.*
[12]  21 Am Jur 2d, Criminal Law §§ 313, 314.
[14]  21 Am Jur 2d, Criminal Law § 1.
[15]  21 Am Jur 2d, Criminal Law §§ 318, 319, 322, 326.
[16]  21 Am Jur 2d, Criminal Law § 322.
   4 Am Jur 2d, Appeal and Error § 273.
   87 L ed 1201; 1 L ed 2d 1876.
[17]  4 Am Jur 2d, Appeal and Error § 159.
   16 Am Jur 2d, Constitutional Law § 584.
[18]  21 Am Jur 2d, Criminal Law §§ 317, 322.
[19]  4 Am Jur 2d, Appeal and Error § 159.
   16 Am Jur 2d, Constitutional Law § 584.
   21 Am Jur 2d, Criminal Law §§ 232, 322.
[20]  21 Am Jur 2d, Criminal Law § 322.
[21–26]  21 Am Jur 2d, Criminal Law §§ 233, 322.
[27]  21 Am Jur 2d, Criminal Law § 233.
[28]  4 Am Jur 2d, Appeal and Error § 159.
   5 Am Jur 2d, Appeal and Error § 867.

2. SAME—MISDEMEANOR—ASSISTANCE OF COUNSEL—TRANSCRIPT.

Defendant who was charged with the crime of receiving and concealing stolen property under the value of $100, a misdemeanor cognizable by a justice of the peace, is entitled as a matter of right to have counsel appointed to appeal his conviction and to a free copy of portions of transcript and record essential to preparation of postconviction motions and appeal (Const 1963, art 1, § 20; CLS 1961, § 750.535; GCR 1963, 785.4).

3. JUDGES—APPELLATE COURTS—FREEDOM OF EXPRESSION—PREDETERMINATION VIEWS.

Views expressed by judges of an appellate court while deliberating upon their decisions ought to remain confidential until they appear in an opinion, if they ever do, over the signature of the author, thereby permitting judges to discuss freely among themselves all issues involved in a case and advance tentative views for reactions and criticisms of colleagues.

4. SAME—APPELLATE COURTS—FREEDOM OF EXPRESSION.

Freedom of expression *in camera* should be encouraged among justices in an appellate court who have the duty to strive to reach majority accord when that can be achieved without compromise of legal principles, and such freedom ought not to be inhibited by the threat of public disclosure.

5. SAME—COURTS OF LAST RESORT—SOLIDARITY OF CONCLUSION.

Judges constituting a court of last resort should use effort and self-restraint to promote solidarity of conclusion and the consequent influence of judicial decision (Canons of Judicial Ethics, No 19).

REFERENCES FOR POINTS IN HEADNOTES

[29]  21 Am Jur 2d, Criminal Law §§ 233, 322.
[30]  21 Am Jur 2d, Criminal Law §§ 309, 318.
[31]  16 Am Jur 2d, Constitutional Law § 204.
   20 Am Jur 2d, Courts § 226.
[32, 33]  20 Am Jur 2d, Courts § 226.
[34, 35]  21 Am Jur 2d, Criminal Law §§ 233, 322.
[36]  16 Am Jur 2d, Constitutional Law §§ 58, 59, 87, 88.
[37]  16 Am Jur 2d, Constitutional Law § 87.
[38]  16 Am Jur 2d, Constitutional Law §§ 58, 59, 75.
[39]  16 Am Jur 2d, Constitutional Law §§ 83, 87.
[40, 41]  15 Am Jur 2d, Civil Rights §§ 1–4.
[42, 43]  20 Am Jur 2d, Courts §§ 1, 64.
[44]  21 Am Jur 2d, Criminal Law §§ 233, 322.

6. CRIMINAL LAW—MISDEMEANOR—SENTENCE—MOOT CASE—PAROLE VIOLATION.

*Appeal from a case involving a misdemeanor conviction and sentence of 90 days in jail which was served by defendant held, not moot, where the misdemeanor conviction was held to constitute a parole violation and defendant was remanded to State prison to serve remainder of an old sentence.*

7. SAME—APPEAL AND ERROR—MOOT CASE—SENTENCE.

*An appeal from a criminal conviction and sentence is not necessarily moot because the sentence has been served, because although the term has been served, the results of the conviction may persist, and subsequent convictions may carry heavier penalties.*

8. SAME—APPEAL AND ERROR—RIGHT TO COUNSEL—MISDEMEANOR CASES.

*Constitutional provision and court rule provisions granting right to appeal and to appellate counsel and trial transcript in criminal cases make no distinction between felonies and misdemeanors, or types or seriousness of crimes (Const 1963; art 1, § 20; GCR 1963, 785.4).*

9. SAME—OFFENSE COGNIZABLE BY JUSTICE OF THE PEACE—MAXIMUM PENALTY.

*The determination of whether or not an offense is cognizable by a justice of the peace is dependent upon the permissible maximum penalty, not on whether the statute has denominated the offense a misdemeanor or a felony (CL 1948, §§ 750.7, 750.8, 750.504; CLS 1961, § 774.1).*

10. SAME—OFFENSES NOT COGNIZABLE BY JUSTICE OF THE PEACE—LIMITATION ON POWERS.

*The powers of a justice of the peace with respect to an offense not cognizable by him are limited to issuance of a warrant, conducting a preliminary examination, and either discharging the accused or binding him over for trial (CL 1948 and CLS 1961, §§ 766.2–766.15).*

11. SAME—WORDS AND PHRASES—CIRCUIT COURT MISDEMEANORS.

*Circuit court misdemeanors is a term used to describe offenses which are labeled as misdemeanors by the statute but because of the maximum penalty are not cognizable by a justice of the peace, and the justice's power over the offense is limited to binding the accused over to circuit court for trial.*

12. Same—Circuit Court Misdemeanors—Assistance of Counsel.
   *A defendant, charged with a circuit court misdemeanor, who is bound over to circuit court by the justice of the peace, must follow a procedure that is the same as for one accused of a felony, and the defendant's need for assistance of counsel may well be as great as in felony cases.*

13. Same—Conviction of Misdemeanor—Right to Appellate Counsel—Transcript.
   *An indigent misdemeanant in a criminal case is entitled as a matter of right to have counsel appointed to appeal a misdemeanor conviction, and he is entitled as a matter of right to a free copy of portions of transcript and record essential to preparation of postconviction motions and appeal, his liberty being involved and in jeopardy (Const 1963, art 1, § 20; GCR 1963, 785.4).*

14. Same—Violations of Ordinances.
   *The violations of village or city ordinances are not considered criminal offenses, since the term* criminal cases, *used in the laws, refers to none but prosecutions under the State laws.*

Separate Opinion.

T. M. Kavanagh, C. J., and Souris, J.

See headnotes 3 and 4.

15. Criminal Law—Conviction of Misdemeanor—Right to Appellate Counsel—Transcript.
   *An indigent misdemeanant in a criminal case cognizable by a justice of the peace is entitled as a matter of right to have counsel appointed to appeal a conviction of a misdemeanor, and he is entitled as a matter of right to a free copy of portions of transcript and record essential to preparation of postconviction motions and appeal (Const 1963, art 1, § 20; GCR 1963, 785.4).*

16. Same—Misdemeanor—Moot Case—Appointment of Counsel—Parole Violation.
   *Defendant's service of his misdemeanor jail sentence does not render a future appeal of that conviction moot so as to justify the trial judge's denial of the defendant's request, without a finding that he is not indigent, for appointment of appellate counsel and for the trial transcript, where the misdemeanor conviction was held to constitute a parole violation and defendant was remanded to State prison to serve the remainder of a former sentence.*

17. Constitutional Law—Criminal Law—Appeal as a Matter of Right.

*The clause "to have an appeal as a matter of right" was added to the State Constitution as a guarantee of the right of a defendant to at least one appeal in a criminal case, and the provision was not intended to restrict the legislature in its power to provide by law for additional appeals (Const 1963, art 1, § 20).*

18. Criminal Law—Court Rule—Right to Counsel—Transcript.

*New provision of court rule which requires sentencing judge to advise defendant at time of sentencing of his right to appellate review of his conviction, and that he is entitled to assigned counsel and transcript if he is unable to provide them, applies to all criminal cases in which sentence is imposed on or after the effective date of the amendment making such addition to the court rule (GCR 1963, 785.4[1], as amended effective August 1, 1964).*

19. Constitutional Law—Criminal Law—Appeal as of Right—Right to Counsel—Discrimination Between Rich and Poor.

*A State providing for an appeal as of right to defendants convicted of crimes is obliged, by the requirements of the equal protection clause to provide indigent appellants the assistance of counsel on appeal and a trial transcript in order to avoid discrimination between rich and poor (US Const, Am 14).*

20. Same—Criminal Law—Right to Counsel—Discrimination Between Rich and Poor.

*The merits of the one and only appeal an indigent has as of right, made without the benefit of counsel, effects an unconstitutional line of discrimination between rich and poor (US Const, Am 14).*

21. Same—Criminal Law—Trial Transcript—Discrimination Between Rich and Poor.

*A State which grants an appeal as of right may not discriminate between rich and poor defendants, charged with crime, by denying to an indigent appellant the use of a trial transcript if such transcript may be purchased by an affluent appellant for use in presenting his appeal (US Const, Am 14).*

22. Criminal Law—Right to Transcript—Discrimination Between Rich and Poor.

*It is the duty of the State in all criminal cases to provide an indigent as adequate and effective an appellate review as that*

*given appellants with funds, and the State must provide the indigent defendant with means of presenting his contentions to the appellate court which are as good as those available to a nonindigent defendant with similar contentions (US Const, Am 14).*

23. CONSTITUTIONAL LAW—APPEAL OF RIGHT—APPOINTMENT OF COUNSEL—TRIAL TRANSCRIPT.

*Our constitutional guarantee of appellate review as of right, and recent judicial precedent require that State appoint appellate counsel and furnish trial transcripts for indigents in all criminal cases which now in this State may be appealed as a matter of right (Const 1963, art 1, § 20; GCR 1963, 785.4 [1]).*

24. CRIMINAL LAW—COURT RULES—APPOINTMENT OF COUNSEL.

*Court rule provision applicable to criminal cases long since tried to conviction and sentencing, in which application for discretionary review may be filed, requires that upon request by an indigent defendant, our courts* shall *appoint counsel and* shall *furnish so much of the trial transcript as counsel requires for postconviction proceedings and preparation of application for leave to take delayed appeal (GCR 1963, 785.4[2]).*

25. SAME—COURT RULES—DISCRETION OF COURT—INDIGENTS.

*No discretionary power is given to trial judges to refuse appellate counsel or trial transcript, once indigency is determined (GCR 1963, 785.4[2]).*

26. SAME — MISDEMEANANT — APPOINTMENT OF COUNSEL — COURT RULES.

*Refusal of trial judge to grant indigent misdemeanant's request for appellate counsel and trial transcript upon proof of indigency as required by express terms of court rule* held, *reversible error (GCR 1963, 785.4[2]).*

27. APPEAL AND ERROR—DELAYED APPEALS—FELONIES—COURT RULES—APPOINTMENT OF COUNSEL—CRIMINAL LAW.

*Contention that court subrule relative to delayed appeals has applied in the past only to felonies, and for that reason does not apply to an indigent misdemeanant* held, *without merit, where no such restriction appears in the language of the subrule, or in the constitutional guarantee of appellate review "in every criminal prosecution" (Const 1963, art 1, § 20; GCR 1963, 785.4[2]).*

28. CRIMINAL LAW—JUDICIAL EXPERIENCE—APPELLATE REVIEW.
   *Judicial experience suggests that where opportunity exists for effective appellate review of trial court proceedings, such proceedings usually are conducted with greater diligence toward the rights of the accused and greater attention to the adequacy of the record to support what is done in the trial court.*

SEPARATE OPINION.

KELLY, J.

29. CONSTITUTIONAL LAW—CRIMINAL LAW—APPOINTMENT OF COUNSEL—MISDEMEANORS.
   *Provision of new Constitution awarding defendants "in every criminal prosecution" the right "to have the assistance of counsel for his defense," and "to have such reasonable assistance as may be necessary to perfect and prosecute an appeal," and provision of Constitution of United States granting accused "in all criminal prosecutions" the right "to have the assistance of counsel for his defense" permit the petty offense exception made by the Federal criminal justice act, and, therefore, do not require appointment of trial and appellate counsel in every misdemeanor prosecution (US Const, art 6; Mich Const 1963, art 1, § 20; 18 USCA § 3006A).*

30. CRIMINAL LAW—RECEIVING STOLEN GOODS—APPEAL AND ERROR.
   *Conviction of defendant of crime of receiving and concealing stolen property under the value of $100 held, improper, because defendant has served and is still serving a lengthy prison sentence as parole violator in addition to a 90-day confinement in jail due to the fact that trial court, without a jury and without defendant being represented by counsel, pronounced judgment that defendant was guilty of a petty misdemeanor (CLS 1961, § 750.535).*

See headnotes 1 and 6.

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and DETHMERS, SOURIS, and ADAMS, JJ.
See headnotes 3–5.

DISSENTING OPINION.

BLACK, J.

31. CONSTITUTIONAL LAW—CONSTRUCTION—SUPREME COURT OF THE UNITED STATES.
   *Ascertainment of what was and is required by some standing principle or provision appearing in the Constitution of the*

*United States should be left to the Supreme Court of the
United States, and it is not the function of the State Supreme
Court to anticipate the holding of the Federal Supreme Court.*

32. SAME—CRIMINAL LAW—APPOINTMENT OF COUNSEL.

*Ascertainment as to whether the amendment of the Constitution
of the United States relative to providing assistance of counsel
to one accused of crime requires that our State extend such
right of assistance of counsel to* all *criminal cases should be
decided by such Federal guidelines as are provided by the
cases decided by the Supreme Court of the United States.*

33. COURTS—STATES—UNITED STATES—SUPREME COURT.

*The Supreme Court of this State is, so far as Federal questions
are concerned, a subordinate court to the Supreme Court of the
United States.*

34. CRIMINAL LAW—APPOINTMENT OF APPELLATE COUNSEL—TRAN-
SCRIPT—INDIGENT DEFENDANTS—PETTY CASES.

*Appointment of appellate counsel and furnishing of trial tran-
script to defendant who had been found guilty of having re-
ceived stolen property of the value of less than $100 held,
not required by constitutional guarantees, since this offense
is "petty" by Federal standards and not entitled to assistance
of counsel as provided by the Constitution of the United States
(US Const, Ams 6, 14; Mich Const 1963, art 1, § 20; 18 USCA
§§ 1, 3006A[a]; CLS 1961, § 750.535).*

35. SAME—APPOINTMENT OF COUNSEL—INDIGENT DEFENDANTS—PET-
TY OFFENSES.

*Recent cases decided by the Supreme Court of the United States
requiring appointment of counsel for indigent defendants
charged with or convicted of felony and other serious offenses,
speaking as they do of discrimination against the poor "on
account of their poverty" in the context of murder and other
serious crimes do not support the proposition that counsel
and trial transcript should be provided at public expense for
the indigent who has been charged with or convicted of a petty
offense (Griffin v. Illinois, 351 US 12; Douglas v. California,
372 US 353; Lane v. Brown, 372 US 477; Draper v. Wash-
ington, 372 US 487).*

36. CONSTITUTIONAL LAW—CONSTRUCTION BY JUDICIARY—LAWS AND
USAGE OF TIME.

*A constitutional provision is looked upon and construed by the
judiciary as the people understood it at the time of debate
and vote, having regard for the "laws and usages" of that
time.*

37. Same—Peculiar History—Construction by Judiciary.

*Every constitution should be interpreted in the light of its own peculiar history so that it is not made to express purposes which were never within the minds of the people in agreeing to it.*

38. Same—Construction by Judiciary.

*It is the duty of a court in construing a constitution to enforce the law which the people have made, and not some other law which the words of the constitution may possibly be made to express.*

39. Same—Constitutional History—Criminal Prosecution.

*The expression "criminal prosecution" in the new Constitution has a history of words, meaning, and public comprehension going back to the bill of rights in the Constitution of the United States and carrying through our prior Constitutions, which indicates that the expression has never been understood generally, or by any judgment of the Supreme Court of the United States or by any judgment of this Court, or by "any sense most obvious to the understanding" as including within its compulsive scope all prosecutions for all offenses cognizable in all of our courts (US Const, Am 6; Mich Consts 1835, 1850, 1908, and 1963, art 1, § 20).*

40. Criminal Law—Civil Rights—Law-Abiding Citizens.

*Courts should consider at great length the "civil rights" of that great unnumbered multitude of law-abiding citizens and that constantly multiplying number of victims of today's fearsome crime wave.*

41. Same—Civil Rights.

*Everyone has civil rights; not just those who may be arrested and charged with crime or petty offense.*

42. Courts—Supreme Court.

*The Supreme Court belongs to the people of the State, and is not owned and possessed by the eight justices.*

43. Same—Business of Supreme Court—People's Business.

*The business of the Supreme Court is the people's business.*

DISSENTING OPINION.

O'HARA, J.

See headnotes 1 and 6.

44. CONSTITUTIONAL LAW—APPOINTMENT OF COUNSEL—INDIGENT MIS-
   DEMEANANTS.
   *Decisions of the Supreme Court of the United States involving
   felonies do not require a State to furnish indigent misdemean-
   ants counsel at public expense.*

Appeal by leave granted from Court of Appeals,
Division 1; Lesinski, C. J., and J. H. Gillis and
Watts, JJ., order denying leave to appeal from an
order of Recorder's Court for the City of Detroit;
Schemanske (Frank G.), J., of October 29, 1964,
denying defendant appellate counsel and transcript.
Submitted April 6, 1966. (Calendar No. 3, Docket
No. 51,212.) Decided January 4, 1967.

Alton Mallory was convicted of receiving and con-
cealing stolen property under the value of $100.
Order reversed and cause remanded for further
proceedings.

*Frank J. Kelley,* Attorney General, and *Robert
A. Derengoski,* Solicitor General, *Samuel H. Olsen,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-
pellate Lawyer, and *James E. Lacey,* Assistant
Prosecuting Attorney, for the people.

*Goodman, Crockett, Eden, Robb & Philo (Rolland
R. O'Hare* and *Sheldon M. Meizlish,* of counsel), for
defendant.

*Amicus Curiae:*
Civil Liberties Committee of the State Bar of
Michigan, by *Irving Tukel.*

Dethmers, J. This is an appeal, upon leave granted, from Court of Appeals' denial of application for delayed appeal from an order of the recorder's court of the city of Detroit denying defendant's motion for appointment of appellate counsel and free transcript for appeal purposes.

On May 11, 1964, defendant was convicted, by a judge sitting without a jury, in the recorder's court of the city of Detroit, of the misdemeanor of receiving and concealing stolen property under the value of $100.* This is an offense cognizable by a justice of the peace. The maximum permissible sentence is 90 days in jail or $100 fine or both. He was sentenced to 90 days in the Detroit house of correction and served the sentence.

It is urged by the people that because defendant completed service of his sentence this appeal should be dismissed on the ground that the case has become moot. For this the following authorities are cited: *People* v. *Leavitt,* 41 Mich 470; *City of Ishpeming* v. *Maroney,* 49 Mich 226; *Pittsburgh Plate Glass Co.* v. *Charles Klein Co.,* 177 Mich 399; *Howe* v. *Doyle,* 187 Mich 655; *Thomas* v. *Montcalm Circuit Judge,* 228 Mich 44; *Sullivan* v. *Michigan State Board of Dentistry,* 268 Mich 427; *Horowitz* v. *Rott,* 235 Mich 369; *People* v. *Pyrros,* 323 Mich 329; *Johnson* v. *City of Muskegon Heights,* 330 Mich 631; *McCarthy* v. *Wayne Circuit Judge,* 294 Mich 368.

At the time of the alleged commission of the misdemeanor and his conviction thereof, defendant was on parole from a previous sentence on a 1962 felony conviction. After the May 11, 1964, misdemeanor conviction, defendant was found guilty by the parole board of parole violation and, after service of his

---

* CLS 1961, § 750.535 (Stat Ann 1965 Cum Supp § 28.803).—Reporter.

90-day misdemeanor sentence, was remanded to State prison as a parole violator and is still there as provided by law, serving the remainder of his sentence for the 1962 felony conviction.

There is question as to how the matter of the reasons for his parole revocation, set forth in defendant's appendix, came into the record in this case. However, the people's appendix contains material which equally goes into the matter. From all that appears in the appendices it is evident that either defendant's misdemeanor conviction automatically brought about a finding by the parole board of parole violation or that, at least, that conviction was an element and factor in the parole violations charged against defendant and considered by the board in making its finding of parole violation. Accordingly, we consider the above cases cited by the people with respect to mootness inapt. Defendant's present incarceration may well be considered a consequence, in part at least, of this misdemeanor conviction. More to the point is *United States* v. *Morgan*, 346 US 502 (74 S Ct 247, 98 L ed 248), in which the United States Supreme Court said (pp 512, 513):

"Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties. * * * As the power to remedy an invalid sentence exists, * * * respondent is entitled to an opportunity to attempt to show that this conviction was invalid."

See, also, *Jones* v. *Cunningham*, 371 US 236 (83 S Ct 373, 9 L ed 2d 285); *United States, ex rel. Harton*, v. *Wilkins* (CA 2), 342 F2d 529; *Williams* v. *United States* (CA 7), 332 F2d 36; *United States* v. *Cariola* (CA 3), 323 F2d 180; *Williams* v. *United States* (CA 7), 310 F2d 696; *United States* v. *Moore* (CA 7), 166 F2d 102; *United States* v. *Steese* (CA

3), 144 F2d 439; *United States, ex rel. Oddo,* v. *Fay* (DC, NY), 236 F Supp 242; *Janiec* v. *State of New Jersey,* 85 NJ Super 68 (203 A2d 727); *Bojinoff* v. *People,* 299 NY 145 (85 NE2d 909). Because of the parole revocation and present resultant imprisonment, we cannot hold this case moot.

Defendant was not represented by counsel at the misdemeanor trial. Since trial defendant has said that he did not waive his right to trial by jury and the record does not clearly disclose that he did. Other claims of reversible error with respect to the trial and conviction are suggested. None of these, however, are before us for determination now. Rather, it is the subsequent occurrences which are the subject of this appeal. We turn now to these.

Defendant's brief states the question involved in this appeal as follows:

"Is an indigent misdemeanant entitled as a matter of right to have counsel appointed to appeal a misdemeanor conviction?"

Despite defendant's wording of this question, it will be noted that there is involved not only appointment of appellate counsel but also furnishing to defendant of a free copy of portions of transcript and record essential to preparation of postconviction motions and appeal.

In *Griffin* v. *Illinois,* 351 US 12 (76 S Ct 585, 100 L ed 891, 55 ALR2d 1055), indigent defendants were convicted of armed robbery, which was undoubtedly, as in Michigan, a felony. It was held that the due process and equal protection clauses of the 14th Amendment to the Federal Constitution required furnishing defendants, at public expense, with the portions of the transcript of trial necessary for taking and presenting an appeal.

In *Gideon* v. *Wainwright,* 372 US 335 (83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733), an indigent

defendant convicted of a noncapital felony was denied appointment of trial counsel. The court held that defendant's trial and conviction without being accorded the fundamental right of assistance of counsel violated the 14th Amendment.

In *Douglas* v. *California,* 372 US 353 (83 S Ct 814, 9 L ed 2d 811), indigent defendants were convicted of 13 felonies. Denial of their requests for appointment of counsel to prosecute an appeal was held to amount to discrimination between the rich and the poor, in violation of the 14th Amendment.

In *Patterson* v. *Warden, Maryland Penitentiary,* 372 US 776 (83 S Ct 1103, 10 L ed 2d 137), defendant had been denied court-appointed counsel because the Maryland statute provided for this only in capital or "serious" cases and the trial court said this one was neither. He was convicted of carrying concealed weapons and sentenced to two years' imprisonment. The United States Supreme Court vacated judgment and remanded for reconsideration in the light of *Gideon* v. *Wainwright, supra.*

Similar are the cases of *Lane* v. *Brown,* 372 US 477 (83 S Ct 768, 9 L ed 2d 892), involving a conviction for murder, and *Draper* v. *Washington,* 372 US 487 (83 S Ct 774, 9 L ed 2d 899), in which the indigent defendants were convicted of robbery.

These United States Supreme Court decisions, all involving felonies, may not necessarily be controlling of the question in the instant case relating to a misdemeanor.

The Federal criminal justice act, 18 USCA, § 3006A(b), provides that "In every criminal case in which the defendant is charged with a felony or a misdemeanor, *other than a petty offense,* and appears without counsel" (emphasis supplied) defendant shall be advised by the commissioner or

court that counsel will be appointed to represent him if he is financially unable to obtain counsel.

In the opinions of certain Federal courts of appeal cases language appears indicating that statutory denomination of the offense as a felony or fixing of a serious penalty or the offense being a serious one are not prerequisites to the constitutional right to counsel at public expense and apprisal of defendant of his rights thereto. These do not appear to give heed to the "petty offense" provision of the above Federal statute. For example:

In *Evans* v. *Rives* (CA DC), 126 F2d 633, 638, the court of appeals for the District of Columbia said:

"It is further suggested by the District of Columbia that the constitutional guaranty of the right to the assistance of counsel in a criminal case does not apply except in the event of 'serious offenses.' No such differentiation is made in the wording of the guaranty itself, and we are cited to no authority, and know of none, making this distinction. The purpose of the guaranty is to give assurance against deprivation of life or liberty except strictly according to law. The petitioner would be as effectively deprived of his liberty by a sentence to a year in jail for the crime of nonsupport of a minor child as by a sentence to a year in jail for any other crime, however serious. And so far as the right to the assistance of counsel is concerned, the Constitution draws no distinction between loss of liberty for a short period and such loss for a long one."

In *Harvey* v. *Mississippi* (CA 5), 340 F2d 263, 271, defendant was convicted, on plea of guilty, of the misdemeanor of possession of whiskey and sentenced to a 90-day jail term and to pay $500 fine. The fifth circuit court of appeals, after quot-

ing the above quotation from the *Evans* v. *Rives Case,* went on to say:

"While the rule as thus stated has never been expressly extended to misdemeanor charges in State tribunals, it has been argued that such a principle is implicit in the Supreme Court's decision in *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733). Be this as it may, the reasoning in *Evans* along with other recent right-to-counsel decisions persuades us that we should apply that rule in the present case. See *Hamilton* v. *Alabama, supra,*[1] *White* v. *State of Maryland, supra.*[2] The failure of notice to Harvey of his right to the assistance of counsel invalidated his guilty plea and rendered his conviction and incarceration constitutionally improper. We therefore reverse the judgment of the trial court and remand the case for the entry of judgment ordering the release of the appellant from custody on the present conviction and sentence."

In *McDonald* v. *Moore* (CA 5), 353 F2d 106, 110, defendant was convicted, on plea of guilty, of the misdemeanor of possession and sale of intoxicating liquor and sentenced to pay a fine of $250 or serve 6 months in county jail. The court of appeals, fifth circuit, reversed the district court's denial of habeas corpus, and, after again quoting the above language from *Evans* v. *Rives, supra,* continued:

"In approving the above quotation this court has, we think, rejected the 'serious offense' rule. We also think that *Gideon* has repudiated the *Betts* v. *Brady*[3] *ad hoc* special circumstance rule of 'an appraisal of the totality of facts in a given case.' We are without any authority authorizing the announcement of a petty offense rule. We are not, fortunately, precluded from following precedent.

[1] 368 US 52 (82 S Ct 157, 7 L ed 2d 114).
[2] 373 US 59 (83 S Ct 1050, 10 L ed 2d 193).
[3] 316 US 455 (62 S Ct 1252, 86 L ed 1595).

In the *Harvey Case* the facts were so similar to those in the case before us as to permit, and probably to require that our decision be the same as was there announced. There it was held that the failure to notify the appellant of his right to the assistance of counsel rendered the plea of guilty and the judgment of conviction and sentence constitutionally invalid. We make the same holding as to the appellant here."

Among State court of last resort opinions of similar import are:

*State* v. *Anderson*, 96 Ariz 123, 131 (392 P2d 784). In that case defendant was convicted of the misdemeanor of attempting to assist the escape from county jail of a prisoner held on felony charges. Defendant was sentenced to 18 months' imprisonment. He had been denied court-appointed counsel at trial, but was granted appellate counsel. A court rule in that State required appointment of counsel in felony cases. The court said, however, that *"Gideon"* requires appointment of counsel in cases of "a misdemeanor which falls in the category of a 'serious offense,'" and said, further, that this case was a serious one in which the sentence could be up to 2 years' imprisonment.

*Bolkovac* v. *State*, 229 Ind 294 (98 NE2d 250). In Indiana the Constitution provides for the right to counsel for accused and since it makes no distinction between felonies and misdemeanors, the court held that the right must apply also to misdemeanors, saying that otherwise the legislature could defeat the constitutional provisions and right to counsel by merely denominating offenses as misdemeanors. In this case the offense was child neglect and the sentence for 180 days. Defendant was not given counsel at trial. Reversed on that account.

*People* v. *Witenski,* 15 NY2d 392 (259 NYS2d 413, 207 NE2d 358). Defendants were convicted of stealing apples of a value of about $2 in an orchard. They received a 30-day jail sentence plus fine of $25 which none could pay. Hence, they were required to serve 55 days in jail. Although there was a statutory involvement not present in Michigan, the court held that there was a right to appointed counsel in every criminal case "large or small." Because the justice of the peace, upon their arraignment, only told defendants that they had a right to be represented by counsel but failed to state that they had a right to have counsel appointed for them if they were unable to procure same, the conviction was reversed on that account for violation of "fundamental rights."

*Hunter* v. *State* (Okla), 288 P2d 425. Defendant was convicted of drunk driving, a misdemeanor, and fined $125. The court held that defendant had a right to appointed counsel because the State's Constitution, in providing therefor, made no distinction in that regard between felonies and misdemeanors.

*State, ex rel. Barth,* v. *Burke,* 24 Wis 2d 82 (128 NW2d 422). Defendant was convicted, on plea of guilty, of 19 counts of issuing worthless checks, all misdemeanors. After defendant told the trial court that he owned certain property, that court determined that he was not indigent and accepted his guilty plea. He was sentenced to 4 years' probation and, upon violation thereof, to 5 years' imprisonment. The appellate court held that the finding of nonindigency was arbitrary and, hence, for failure to appoint or offer to appoint counsel, reversed the conviction with new trial.

Michigan Constitution of 1963, art 1, § 20, provides that, "In every criminal prosecution, the accused shall have the right * * * to have the assistance

of counsel for his defense; to have an appeal as a matter of right; and in courts of record, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."

GCR 1963, 785.4,[4] provides:

"(1) * * * immediately upon sentencing, the court shall advise the defendant in open court that he is entitled as a matter of constitutional right to appellate review of his conviction and that, if defendant is financially unable to provide counsel to perfect such appeal, the court will appoint counsel for him and will furnish counsel with such portions of the trial transcript counsel requires to prepare postconviction motions and to perfect an appeal. * * *

"(2) Delayed Appeal. In all other criminal cases, application for leave to take delayed appeal may be filed pursuant to the provisions of Rule 806. Upon defendant's request, if defendant is indigent, the trial court in which defendant was convicted shall appoint counsel for him and shall furnish such portions of the trial transcript counsel so appointed requires to prepare delayed motions for postconviction proceedings in the trial court and to prepare an application for leave to take delayed appeal."

No distinction is made between felonies and misdemeanors or types or seriousness of crimes in the above quoted language from the Constitution of Michigan and the Michigan court rule relating to the rights of criminal appeal.

The following definitions appear in the Michigan statutes:

"The term 'felony' when used in this act, shall be construed to mean an offense for which the offender, on conviction, may be punished by death,

---

or by imprisonment in state prison." CL 1948, § 750.7 (Stat Ann 1962 Rev § 28.197).

"When any act or omission, not a felony, is punishable according to law, by a fine, penalty or forfeiture, and imprisonment, or by such fine, penalty or forfeiture, or imprisonment, in the discretion of the court, such act or omission shall be deemed a misdemeanor." CL 1948, § 750.8 (Stat Ann 1962 Rev § 28.198).

The only distinction between felonies and misdemeanors, insofar as these definitions are concerned, appears to be whether imprisonment is to be in State prison or the county jail.

CL 1948, § 750.504 (Stat Ann 1954 Rev § 28.772), provides:

"A person convicted of a crime declared in this or any other act of the state of Michigan to be a misdemeanor, for which no other punishment is specially prescribed by any statute in force at the time of the conviction and sentence, shall be punished by imprisonment in the county jail for not more than 90 days or by a fine of not more than 100 dollars, or by both such fine and imprisonment."

CLS 1961, § 774.1 (Stat Ann 1954 Rev § 28.1192), empowers justices of the peace to try all criminal charges punishable by fine not exceeding $100 or imprisonment in the county jail not exceeding 3 months or both such fine and imprisonment. The justice of the peace is empowered to impose these sentences. These are referred to as criminal offenses cognizable by a justice of the peace. Whether or not thus cognizable is made dependent on the permissible maximum penalty and not on whether the statute has denominated the offense to be a misdemeanor or felony.

CL 1948 and CLS 1961, §§ 766.2–766.15 (Stat Ann 1954 Rev §§ 28.920–28.933), inclusive, relate to

offenses not cognizable by a justice of the peace. In these it is provided that the justice of the peace may issue a warrant, after arrest conduct an examination of the accused and either discharge him or bind him over for trial in circuit court, depending on whether it shall appear to the justice of the peace that a crime not cognizable by him has been committed and whether there is probable cause to believe the defendant has committed it. The subsequent proceedings occur in the circuit court or other court of comparable level having jurisdiction thereof.

There are instances in the Michigan statutory law in which offenses are named misdemeanors and for which the maximum penalty fixed exceeds $100 fine or 3 months' imprisonment or both. For example: Certain violations of rules and regulations of the public utilities commission are termed "misdemeanors" (CL 1948, § 460.55 [Stat Ann § 22.5]) and the penalties fixed at not less then $10 nor more than $1,000 or imprisonment in county jail for not more than 6 months, or both. In *People* v. *Causley,* 299 Mich 340, after discussion of the distinction between felonies and misdemeanors, this Court speaks of *People* v. *Lamb,* 153 Mich 675, in which, so the Court said, the crime of extortion there involved was a misdemeanor punishable by not more than one year in county jail or $250 fine or both. See, also, *In re Moynahan,* 255 Mich 497, in which this Court refers to the offense therein involved, possession of narcotics, as a misdemeanor punishable by imprisonment limited to one year. See, also, in that connection, *In re Spencer,* 252 Mich 48. This gives rise to the term, used in criminal law circles, "circuit court misdemeanors". That is to say, the statute labels the offense a misdemeanor, but, by fixing the maximum penalty, renders the offense one not cognizable by a justice of the peace

and, hence, one in which the limit of his power is to bind over to circuit court. When so bound over the procedure is the same as for felonies. Defendant's need for legal assistance of counsel then may well be as great as in felony cases. The name "felony" or "misdemeanor" can make small difference as relates to his constitutional right to such assistance. We entertain no doubt that as to such circuit court misdemeanor cases the rule and constitutional requirements are the same as relates to felonies. To hold otherwise would mean, as said in *Bolkovac* v. *State, supra,* that the legislature could defeat constitutional rights by the simple device of labelling offenses as misdemeanors.

In the instant case, however, the offense was one cognizable by a justice of the peace. It might be urged that the apparent distinction made in 18 USCA, § 3006A(b), *supra,* between a felony or misdemeanor, on the one hand, and a "petty offense" has application, should be adopted by this Court, and applied here. Scarcely can it be said, however, that a permissible maximum sentence of 3 months' imprisonment or $100 fine or both leaves the offense one to be regarded as so petty as not entitling the indigent accused to the assistance of counsel. His liberty is involved and in jeopardy in such case. For this the constitutional right is designed to insure equality of treatment and chances for acquittal between the rich who can afford to hire counsel and the poor who cannot.

In behalf of the people it is protested, however, that holding for defendant's contentions in this criminal case would result in a vast wave of pleas of not guilty in cases of clear guilt, with demands for free counsel, in traffic violations of city and village ordinances, of such proportions as to paralyze judicial proceedings in justice of the peace or magistrate courts. Note may be taken with interest,

although not controlling of the case at bar, of the following:

"As before said, the violations of the village ordinances are not considered criminal offenses. *Mixer* v. *Supervisors,* 26 Mich 422; *People* v. *Jackson,* 8 Mich 110; *Jackson* v. *People,* 8 Mich 262." *Village of Vicksburg* v. *Briggs,* 85 Mich 502, 508.

"The term 'criminal cases,' used in the laws, refers to none but prosecutions under the State laws. In *Jackson* v. *People,* 8 Mich 262, and *People* v. *Jackson,* 8 Mich 110, we held that cases under city ordinances could not be brought into this Court by writ of error, or exceptions, but must come up on *certiorari.* They resemble criminal cases only in being penal proceedings, but no offense is a crime which does not violate the law of the land." *Mixer* v. *Supervisors of Manistee County,* 26 Mich 422, 424.

"Violations of village ordinances are not regarded as criminal offenses." 1 Gillespie's Michigan Criminal Law & Procedure, § 2, p 5.

Reversed and remanded to recorder's court for appointment, upon finding of indigency, of appellate counsel for defendant and furnishing of all portions of the transcript and record essential in preparation of postconviction motions and appeal.

Adams, J., concurred with Dethmers, J.

Souris, J. (*concurring in reversal*). Mr. Justice Jackson, concurring in *McGrath* v. *Kristensen* (1950), 340 US 162 (71 S Ct 224, 95 L ed 173), gracefully and forthrightly acknowledged error in a prior opinion he had rendered as attorney general and, in the process, he assembled for us other memorable examples of judicial recantations. His own and

some others included in his opinion are set forth in the margin.[1]

I should like to think that I shall display as much candor and grace as did Justice Jackson whenever it becomes necessary for me to "recede from a prior opinion that has proven untenable and perhaps misled others". This appeal, however, does not present an occasion for my confession of error, Mr. Justice BLACK's current opinion herein notwithstanding.

In his current opinion Justice BLACK breaches that confidence which traditionally has surrounded views expressed in the sanctity of the Court's conference room, in private discussions among the Justices, and in draft opinions never subscribed for

---

[1] "I concur in the judgment and opinion of the Court. But since it is contrary to an opinion which, as Attorney General, I rendered in 1940, I owe some word of explanation. 39 [US] Ops Atty Gen 504. I am entitled to say of that opinion what any discriminating reader must think of it—that it was as foggy as the statute the Attorney General was asked to interpret. It left the difficult borderline questions posed by the Secretary of War unanswered, covering its lack of precision with generalities which, however, gave off overtones of assurance that the act applied to nearly every alien from a neutral country caught in the United States under almost any circumstances which required him to stay overnight.

"The opinion did not at all consider aspects of our diplomatic history, which I now think, and should think I would then have thought, ought to be considered in applying any conscription act to aliens. * * *

"Precedent, however, is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and perhaps misled others. * * * Baron Bramwell extricated himself from a somewhat similar embarrassment by saying, 'The matter does not appear to me now as it appears to have appeared to me then.' *Andrews* v. *Styrap* (Eng), 26 LTRNS 704, 706. And Mr. Justice Story, accounting for his contradiction of his own former opinion, quite properly put the matter: 'My own error, however, can furnish no ground for its being adopted by this Court,' *United States* v. *Gooding*, 12 Wheat (25 US) 460, 478 (6 L ed 693, 699). Perhaps Dr. Johnson really went to the heart of the matter when he explained a blunder in his dictionary— 'Ignorance, sir, ignorance.' But an escape less self-depreciating was taken by Lord Westbury, who, it is said, rebuffed a barrister's reliance upon an earlier opinion of his Lordship: 'I can only say that I am amazed that a man of my intelligence should have been guilty of giving such an opinion.' If there are other ways of gracefully and good naturedly surrendering former views to a better considered position, I invoke them all." 340 US 162, 176–178.

a variety of reasons. He discloses publicly a view I expressed in a draft opinion and then retracted before judgment, not because of persuasion of error but, rather, because further reflection upon my colleagues' contemporaneous views suggested to me a sounder appellate basis for our judgment. Whether I was right or wrong in the views I subsequently retracted is not important now, for those views remain retracted by me and would have misled no one had they not been resurrected by Justice BLACK. What is important, however, is Justice BLACK's implicit threat to the continued privacy of our deliberations upon pending appeals.

It has been my understanding that views expressed by judges of an appellate court while deliberating upon their decisions are confidential until they appear in an opinion, if they ever do, over the signature of the author. Such privacy permits judges to discuss freely among themselves all issues involved in a case, to advance tentative views for the sometimes enlightening reactions of wiser colleagues and to criticize candidly and sometimes bluntly the notions offered by other colleagues, all without fear of subsequent embarrassment to any member of the Court by public disclosure of anything said or written which does not survive the ordeal as a subscribed formal opinion.

In my judgment such freedom of expression *in camera* should be encouraged among Justices whose duty it is to strive, at least, to reach majority accord when that can be achieved without compromise of legal principles. Such freedom should not be inhibited by the threat of public disclosure as Justice BLACK has done today.

—  —  —  —  —  —  —

I agree with Mr. Justice DETHMERS, but for reasons somewhat different from those stated by

him, that the trial judge erred in denying defendant's request, as an indigent, for appointment of appellate counsel and for a free copy of his trial transcript in order to appeal his conviction of a misdemeanor cognizable by a justice of the peace. I also agree with Justice DETHMERS, and based upon the reasons and authorities he cites, that the defendant's service of his misdemeanor jail sentence, under the circumstances of this case, does not render a future appeal of that conviction moot so as to justify the trial judge's denial of the defendant's request, without a finding that he is not indigent, for appointment of appellate counsel and for the trial transcript.

Defendant was convicted on May 11, 1964, by a judge of the recorder's court for the city of Detroit, sitting without a jury, of the misdemeanor[2] of receiving and concealing stolen property of a value under $100. After service of his 90-day jail sentence imposed upon conviction of this offense, defendant was imprisoned and there remains, it is fair from this record to say, as a consequence of his misdemeanor conviction, the State's parole board having revoked defendant's parole from a prior felony imprisonment because of defendant's misdemeanor conviction.

Effective August 1, 1964, this Court amended GCR 1963, 785 by adding a new subrule .4. Subrule 785.4 is subdivided into two distinct parts. The first subpart, 785.4(1), applies to all criminal cases in which sentence is imposed on or after August 1, 1964, the effective date of the amendment. That subpart requires, *inter alia*, that the sentencing judge advise the defendant at the time of sentencing of his constitutionally granted right to appellate review of his conviction (Const of 1963, art 1, § 20)[3] and, if

---

[2] CLS 1961, § 750.535 (Stat Ann 1965 Cum Supp § 28.803).

[3] Article 1, § 20 of our Constitution of 1963, effective January 1, 1964, the year of defendant's conviction, for the first time in the history of this State, guarantees the right of appellate review in all

the defendant is unable financially to retain his own attorney for such purpose, that the trial judge will appoint counsel for him and will furnish whatever portions of the trial transcript are needed by such counsel.  Subpart 785.4(1), in its entirety, reads as follows:

".4 Appellate Court Review.

"(1) Right to Timely Appeal.  Hereafter, immediately upon sentencing, the court shall advise the defendant in open court that he is entitled as a matter of constitutional right to appellate review of his conviction and that, if defendant is financially unable to provide counsel to perfect such appeal, the court will appoint counsel for him and will furnish counsel with such portions of the trial transcript counsel requires to prepare postconviction motions and to perfect an appeal.  The court shall further advise defendant that such request for the assistance of counsel must be made within 60 days on a form to be given to defendant by the court.

criminal cases.  That section provides: "In every criminal prosecution, the accused shall  *  *  *  have an appeal as a matter of right  *  *  *  ".  The significance of the foregoing, and the meaning given to the language by the delegates who drafted it, can be found in the Constitutional Convention's Address to the People, in which the people of this State were assured that:

"The clause, 'to have an appeal as a matter of right' is added as a guarantee of the right of a defendant to at least one appeal in a criminal case.  The provision is not intended to restrict the legislature in its power to provide by law for additional appeals."  2 Constitutional Convention Record 1961, p 3365.

Three weeks after the effective date of our 1963 Constitution, this Court belatedly amended our court rules to conform with the foregoing constitutional mandate.  GCR 1963, 806.1 was amended on January 21, 1964 to read:

".1 Appeal of Right.  In all criminal cases, defendant may appeal to the Supreme Court as a matter of right from any conviction in the circuit, superior, and recorder's courts within the time limited by subrule 803.1, unless the trial in such court followed a trial in a lower court or tribunal for the same offense."

At the same time, GCR 1963, 806.2 was amended to read:

".2 Appeal by Leave.  Except as provided in subrule 806.1, all appeals to the Supreme Court shall be by leave."

Proceedings hereunder shall be stenographically recorded and a transcript thereof promptly made and filed with the clerk of the trial court as a part of the record of the case."

Almost a year and a half before our Court belatedly adopted subrule 785.4, the United States Supreme Court, in *Douglas* v. *California* (1963), 372 US 353 (83 S Ct 814, 9 L ed 2d 811), had ruled that when a State accorded a right of appeal to defendants convicted of crimes, as Michigan does now, it was obliged by the requirements of the equality clause of the Fourteenth Amendment of the United States Constitution to provide indigent appellants the assistance of counsel on appeal in order to avoid discrimination between rich and poor. In the *Douglas Case*, California provided for appellate review of criminal convictions as a matter of right, but it did not require the appointment of appellate counsel for indigent defendants requesting such assistance unless the appellate court first made an independent investigation of the record and determined that it would be advantageous to the defendant or helpful to the appellate court to have counsel appointed.

The United States Supreme Court held that California's denial of appellate counsel to those indigent defendants whose requests therefor did not survive the appellate court's preliminary investigation of the trial court record, thereby forcing the indigent to prosecute his appeal as of right without the assistance of counsel, constituted an invidious discrimination between rich and poor in violation of the equality clause of the Fourteenth Amendment of the United States Constitution.   The Supreme Court said (pp 357, 358):

"where the merits of *the one and only appeal* an indigent has as of right are decided without benefit

of counsel, we think an unconstitutional line has been drawn between rich and poor. * * *

"The present case, where counsel was denied petitioners on appeal, shows that the discrimination is not between 'possibly good and obviously bad cases,' but between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal."

On the same day the United States Supreme Court decided *Douglas, supra*, it also decided *Lane* v. *Brown* (1963), 372 US 477 (83 S Ct 768, 9 L ed 2d 892), and *Draper* v. *Washington* (1963), 372 US 487 (83 S Ct 774, 9 L ed 2d 899). The essence of those decisions is that, when a State grants an appeal as of right, it may not discriminate between rich and poor by denying to an indigent appellant the use of a trial transcript if such transcript may be purchased by an affluent appellant for use in presenting his appeal. See, also, *Griffin* v. *Illinois* (1956), 351 US 12 (76 S Ct 585, 100 L ed 891). Mr. Justice Goldberg, in *Draper,* put the matter succinctly (p 496):

"In all cases the duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with funds—the State must provide the indigent defendant with means of presenting his contentions to the appellate

court which are as good as those available to a non-indigent defendant with similar contentions."

None of the 1963 cases so far discussed, *Douglas* v. *California, Lane* v. *Brown,* and *Draper* v. *Washington,* was decided on the basis of the Sixth Amendment of the United States Constitution, as was *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733), and other similar Federal and State cases concerned with the question whether a State is obliged constitutionally to provide *trial* counsel for an indigent person to be tried in its criminal courts. Instead, *Douglas, Lane,* and *Draper* were planted squarely upon the equality clause of the Fourteenth Amendment. For that reason *Gideon* v. *Wainwright* and other similar Federal and State cases cited to us by the parties hereto, are not apposite to the narrow issue presented in this appeal involving an indigent's right to *appellate* counsel and to trial transcript. In the event defendant succeeds subsequently in prosecuting an appeal challenging the validity of his misdemeanor conviction, there will be time enough for this Court to determine whether his conviction without the assistance of *trial* counsel, an issue not presently before us, offends the Sixth Amendment as applied to the States in *Gideon* and, so, must be set aside for a new trial.

Considered in the context of Michigan's new constitutional guarantee of appellate review as of right, it cannot be doubted that *Douglas* v. *California, Lane* v. *Brown,* and *Draper* v. *Washington* require Michigan to appoint appellate counsel and to furnish trial transcripts for indigents in all criminal cases which now in this State may be appealed as of right. These are the requirements, of Federal constitutional magnitude, announced by the Supreme Court in *Douglas, Lane* and *Draper,* that this Court im-

plemented by adoption of subpart 785.4(1) of the rule.

But subpart 785.4(1) had not been adopted when defendant Mallory was convicted. Thus that part of the rule avails him nothing now, although it could be argued that had he claimed an appeal as of right within the time therefor then provided by GCR 1963, 803, as also amended January 21, 1964, he, as an indigent, would have been entitled to the services of appellate counsel and to be furnished trial transcript by the requirements of the equality clause of the Fourteenth Amendment as determined by *Douglas*, *Lane*, and *Draper*, even absent their timely implementation by us by rule. The fact is that defendant Mallory did not attempt to perfect a timely appeal as of right, nor did he within such time assert his rights to trial transcript and to the appointment of counsel to assist him in doing so.

Thus, if he has any rights to such transcript and to the appointment of appellate counsel now, they must be found elsewhere than in GCR 1963, 785.4(1). That brings us to the second distinct part of the subrule added by our amendment effective August 1, 1964.

While 785.4(1) applies prospectively, in the sense that it specifies procedures to be followed at sentencing in current criminal cases where timely appeal as of right exists, 785.4(2) applies retrospectively, in the sense that it specifies the procedures for furnishing appellate counsel and free trial transcript to indigents in all other criminal cases completed through sentencing before August 1, 1964, the effective date of 785.4(1). Having been convicted and sentenced prior to the effective date of 785.4(1), defendant Mallory's entitlement to the appointment of appellate counsel and to the use of a trial tran-

script must be found, if it exists by court rule as of right, in 785.4(2).

*Douglas* v. *California, supra,* does not *hold* that a State must, as a matter of Federal constitutional requirement, appoint appellate counsel to assist an indigent in pursuing discretionary review of his criminal conviction. While it does not so hold, some have argued that the constitutional principles of equality which the Supreme Court relied upon in *Douglas,* and in *Lane* and *Draper* with reference to the availability of trial transcript, apply as well to applications for discretionary review as they do to appeals as of right. See, pertinently, *Burns* v. *Ohio* (1959), 360 US 252 (79 S Ct 1164, 3 L ed 2d 1209). But whether the Supreme Court ultimately decides they do or they do not, this Court in promulgating GCR 1963, 785.4(2) said that in all other criminal cases than those current ones to which 785.4(1) applies, and that would include in 785.4(2) the criminal cases long since tried to conviction and sentencing, in which application for discretionary review may be filed, upon request by an indigent defendant our trial courts *shall* appoint counsel and *shall* furnish so much of the trial transcript as such counsel requires to prepare delayed motions for postconviction proceedings in the trial court and to prepare applications for leave to take delayed appeal.

There is no discretionary power granted to trial judges in this subpart of the rule to refuse appellate counsel or trial transcript, once indigency is determined.

It is this part of the rule which, by its express terms, required the trial judge to grant defendant Mallory's request for appellate counsel and trial transcript upon proof of indigency. The trial judge's refusal to do so requires our reversal,

Subpart 785.4(2), in its entirety, reads as follows:

"(2) Delayed Appeal. In all other criminal cases, application for leave to take delayed appeal may be filed pursuant to the provisions of Rule 806. Upon defendant's request, if defendant is indigent, the trial court in which defendant was convicted shall appoint counsel for him and shall furnish such portions of the trial transcript counsel so appointed requires to prepare delayed motions for postconviction proceedings in the trial court and to prepare an application for leave to take delayed appeal. Requests for appointment of appellate counsel shall be in writing and accompanied by an affidavit of indigency setting forth the facts upon which defendant relies for support of his claim that he is too poor to employ counsel. Such written request and affidavit shall be filed in the trial court and a copy thereof shall be served upon the prosecuting attorney of the county in which the trial court is located. Counsel shall be appointed by the trial court if, after hearing, the defendant is found to be indigent or if the prosecuting attorney does not file objections within 30 days of service upon him of defendant's request and affidavit of indigency. Appeal fees shall be waived for indigent defendants for whom appellate counsel has been appointed by the court."

Having implemented, in subpart 785.4(1), the clear requirements of the Fourteenth Amendment, as construed in *Douglas* v. *California, Lane* v. *Brown,* and *Draper* v. *Washington,* article 1, § 20 of our Constitution of 1963 considered, it may be conceded, *arguendo,* that this Court was not obliged to do more than that by any United States Supreme Court decision. Yet this Court did go beyond the express requirements of *Douglas, Lane,* and *Draper* in adopting subpart 785.4(2) and it did so for sound reasons of public policy if not, indeed, for reasons of Federal constitutional compulsion.

At the time we acted, in the summer of 1964, there had been granted the right of appeal in all criminal prosecutions only since January 1, 1964, the effective date of our Constitution of 1963. Prior thereto this Court had recognized no such right in criminal cases except in those in which a prison sentence of one or more years had been imposed and that right we did not recognize until January 1, 1963. See GCR 1963, 806.2(3) prior to its amendment on January 21, 1964. Thus, when subrule 785.4 was adopted, of the 8,499 inmates of the State's prisons, 3,640 had been convicted and sentenced before 1963 when there was no appeal as of right from any criminal conviction.[4] From those 3,640 prisoners (whose number diminishes each day by death, service of sentence, and parole) and from those convicted and sentenced to imprisonment for more than one year subsequent to January 1, 1963, but who had not perfected appeals as of right, this Court continued to receive applications for leave to take delayed appeal for its consideration usually without references with pinpoint accuracy to the trial transcripts to support the claims made and without the beneficial assistance of appellate counsel in the translation of their inept pleas of injustice into the legal language judges can understand.

Our published volumes of official reports through volume 374 bear silent witness to the infrequency of our grant of leave to appeal such cases. That errors meriting reversal existed in some at least of those cases, but were not revealed to our appellate gaze by the unskilled draftsmen of those applications, none can deny. On the other hand, other applications were being filed in behalf of affluent

---

4 These statistics were supplied the author of this opinion by telephone on June 30, 1964, by Mr. Gus Harrison, director of the department of corrections, at the time the Court was considering adoption of subrule 785.4.

prisoners who could afford not only the full trial transcript, sometimes even printed for our myopic eyes, but also skilled counsel to prepare and present carefully documented and scholarly briefs riddled with authoritative legal citations and references to the trial transcript to command our attention and our granted leave. Comparison of such applications and briefs, prepared by counsel, with those which were homemade by sometimes barely literate indigent prisoners, demonstrated that indigency alone was responsible for the gross disparity in their persuasive power.

It seemed then to a majority of the Court, and it still seems so to us, that justice to those prisoners who were too poor to retain counsel required no less than that they at least be accorded the assistance of appellate counsel and be furnished trial transcripts to assist them in their attempts to persuade us that there was merit in our undertaking to review their convictions. We did not extend to such prisoners the right to appeal which had been granted, first by court rule and then by our new Constitution, to those convicted subsequent to January 1, 1963; what we did in subpart 785.4(2), instead, was to provide those indigent prisoners, *not* entitled to appeal their convictions as of right, with the professional skills and tools necessary to prepare more effectively than they could previously their applications for discretionary grant of leave to appeal.

It is suggested that subrule 785.4 has applied heretofore only to felonies and, presumably, for that reason subpart 785.4(2) is not available to defendant Mallory. No such restriction appears in the language of the subrule. 785.4(1) of that subrule, considering its language in the light of *Douglas* v. *California, Lane* v. *Brown,* and *Draper* v. *Washington, supra,* certainly must reach as far as does article 1,

§ 20 of our Constitution of 1963 by which the right of appellate review is granted "in every criminal prosecution." While there has been expressed in these opinions the view that such constitutional language may not apply to city and village ordinance violations, no one yet has claimed that our people in adopting it did not intend that it apply to statutory misdemeanors as well as to felonies.[5]  785.4(2) of

---

[5] Nor would such claim be tenable logically.  Art 1, § 20, in its entirety, reads:

"Sec. 20. In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in all courts not of record; to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have the assistance of counsel for his defense; to have an appeal as a matter of right; and in courts of record, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."

The words "in every criminal prosecution", as used in the section, must mean the same thing when applied to each of the other rights granted by the section as it means when applied to the right of appellate review which the section grants. It is interesting to note the extreme position to which we are led, logically, by the argument that "in all criminal prosecutions" does not include misdemeanors among the cases in which the right of appellate review has been granted by the section. If "in all criminal prosecutions" does not include misdemeanors for that purpose, must not the phrase have the same meaning when the section grants to the accused the right "in every criminal prosecution * * * to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in all courts not of record"?  Who among us would venture the suggestion that the people of this State intended to deny such fundamental rights to those accused of misdemeanors and imperiled thereby to a possible jail sentence of up to one year?  Similarly, would anyone suggest, seriously, that when the section grants to the accused the right "in every criminal prosecution * * * to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor * * * " that the people did not intend that such rights apply to all misdemeanors notwithstanding their use of the phrase "in all criminal prosecutions"?

I doubt that anyone would.  That leaves only the possibility, illogical though it be, that the phrase "in all criminal prosecutions" has a variety of meanings depending upon which of the rights granted in section 20 is being considered.  I am reminded of the colloquy between Alice and Humpty Dumpty:

the subrule applies to those criminal cases, whether misdemeanors or felonies, which were tried to conviction and sentence before the August 1, 1964 effective date of 785.4(1) and in which an application for discretionary grant of leave to appeal now is necessary if there is to be appellate review. As a practical matter, except for such rare cases as this case of Mallory and its companion, *People* v. *Copeland,* 378 Mich 611, where the misdemeanor convictions are the effective causes of defendants' continued imprisonment notwithstanding their completion of service of the misdemeanor sentence, 785.4(2) will not be available to a misdemeanant simply because few, if any other, misdemeanants convicted and sentenced after the effective date of 785.4(1) still remain incarcerated as a result of such convictions. In the case of current convictions since adoption of subrule 785.4, whether of felonies or of misdemeanors, an indigent's right to appellate counsel and trial transcript is measured by the time limitations contained in 785.4(1). If such right is not invoked timely, it may subsequently be granted but, as was previously our universal practice, only in the exercise of the inherent discretionary power of the trial or appellate court and not by virtue of anything required as of right either by 785.4(1) or 785.4(2).

It may be noted, furthermore, that of all of the subrules of GCR 1963, 785, only subrule 785.3 ever

"'I don't know what you mean by "glory"'", Alice said.

"Humpty Dumpty smiled contemptuously. 'Of course you don't— till I tell you. I meant "there's a nice knock-down argument for you."'

"'But "glory" doesn't mean "a nice knock-down argument"'", Alice objected.

"'When *I* use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean—neither more nor less.'

"'The question is,' said Alice, 'whether you *can* make words mean so many different things.'" Carroll, Through the Looking Glass, ch 6.

Indeed, that is the question.

has been limited by express language to felonies. This Court currently is considering its express expansion to include some, if not all, misdemeanors.

It has been suggested also that it would be anomalous to read subrule 785.4 as requiring appointment of *appellate* counsel to all indigent misdemeanants as well as felons while subrule 785.3 may not require appointment of *trial* counsel in some misdemeanor cases. That there is a lack of logical symmetry in this possibility cannot be denied. However, as Mr. Justice Holmes reminded us 85 years ago, in The Common Law, "The life of the law has not been logic: it has been experience." Our own experience suggests that where opportunity exists for effective appellate review of trial court proceedings, such proceedings usually are conducted with greater diligence toward the rights of the accused and greater attention to the adequacy of the record to support what is done in the trial court. If this great society of ours yet cannot afford to appoint both trial and appellate counsel for every indigent charged with a misdemeanor and a choice must be made between the two insofar as those indigents are concerned who are charged with commission of the lesser misdemeanors, our experience suggests that a greater public benefit will be realized by providing the means for effective appellate review than by furnishing trial counsel for all indigent misdemeanants.

Furthermore, our people, having granted, in article 1, § 20 of our Constitution of 1963, appeals as of right "in every criminal prosecution," by which no one has suggested yet it was intended to exclude any statutory misdemeanors, it is doubtful that denial of appellate counsel to such misdemeanants, or any of them, would withstand Federal constitutional challenge. See *Douglas* v. *California, supra,* discussed in the forepart of this opinion.

Whether or not required by constitutional principles of equality, what we did in adopting subpart 785.4(2) reduced the likelihood that any of our people would remain imprisoned in this State as the result of convictions which could not withstand appellate scrutiny. There is no way by which we can determine how many trial judges have reversed their own prior decisions on postconviction proceedings in the trial courts since adoption of 785.4(2). However, data is available from which we can determine the incidence of reversible error found on discretionary appellate review after 785.4(2) was adopted and appellate counsel and trial transcript were made available to indigent prisoners to obtain and perfect such discretionary appellate review. That data[6] and the opinions of the Court of Appeals

[6] Mr. Ronald Dzierbicki, Clerk of the Court of Appeals, reported in a letter dated November 4, 1966 and addressed to the author of this opinion, which letter has been filed with the Clerk of this Court, that the Court of Appeals has decided 42 discretionary criminal appeals from January 1, 1965 to November 1, 1966. The Court of Appeals reversed the convictions in 20, ordered hearings for determination of the voluntariness of confessions, per *People* v. *Walker* (On Rehearing 1965), 374 Mich 331, in nine, dismissed appeal in six of the cases (in one of which the appeal was dismissed because the trial court granted the relief defendant was seeking on appeal) and affirmed seven. Of the 30 appeals in which appellant obtained relief (20 reversals, nine remands and one dismissal upon grant of relief by the trial judge), 24 involved indigent appellants represented by court-appointed appellate counsel, three involved appellants represented by retained counsel and three involved indigent appellants appearing in the Court of Appeals *in pro se*. Of the 12 appeals in which convictions were affirmed, five involved indigent appellants represented by court-appointed appellate counsel and seven involved appellants represented by retained counsel.

In the calendar year 1964, before the Court of Appeals commenced operation, the Supreme Court of the State of Michigan decided only seven criminal appeals fully submitted to the Court, in each of which defendant was represented by retained appellate counsel. See volumes 372, 373 and 374 of the Michigan Reports. In the same year, the Supreme Court summarily reversed only four convictions and ordered new trials where fatal defects appeared on the face of the record filed in support of applications for discretionary leave to appeal or for writ of habeas corpus. In none of these four cases was defendant represented by appellate counsel, but transcripts of the proceedings below, fortunately, were available to them and to us. The appellate records are available in our clerk's office. See

which, since January 1, 1965, has heard and decided
such appeals disclose that there have been a signifi-
cant number of reversals for substantial errors
which the defendants, unassisted by counsel and
without trial transcripts, previously could not have
persuaded a court merited review let alone reversal.
Whether such asserted errors relate to the substan-
tive issue of guilt or innocence or to the procedure
by which guilt is established, no defendant appear-
ing in our courts should be denied, just because he
is poor, the means effectively to persuade us that
reversible error occurred and that a new trial should
be granted.   Justice requires no less in a society
such as ours which regards equality as the essence
of democracy and which guarantees to every man
that measure of fair treatment by his government
we call by the name of due process of law.

T. M. KAVANAGH, C.J., concurred with SOURIS, J.

KELLY, J. (*concurring in reversal*).   I join in
Justice BLACK's decision that, "until the Supreme
Court speaks otherwise, I shall look upon the per-
tinent requirement of the Sixth Amendment and of
our Constitution as being fully consistent with the
petty offense exception made by the criminal justice
act," and I hereby register my objection and dissent
to the recent August 24, 1966, amendment to Rule
785 of the General Court Rules of 1963 (effective
January 1, 1967), requiring appointment of counsel
to those charged with misdemeanors upon convic-
tion for which the accused could be jailed for 90
days or more.

---

No 50,772–1/2, *Davis* v. *Calhoun County Circuit Judge,* order entered
March 4, 1964; No 50,812–1/2, *In the Matter of Ash,* order entered
April 16, 1964; No 50,872–1/2, *In the Matter of Inman,* order en-
tered July 9, 1964; and No 51,082–1/2, *In the Matter of Rittenhouse,*
order entered November 6, 1964.

I disagree with Justice Black's affirmance and agree with Justice Dethmers' reversal because defendant has served and is still serving a lengthy prison sentence in addition to a 90-day confinement in jail due to the fact that a recorder's court judge, without a jury and without defendant being represented by counsel, pronounced judgment that defendant was guilty of a petty misdemeanor.

The record discloses:

(1) A letter dated January 8, 1965, from the parole board, signed by Frank G. Buchko, "Re: Alton Mallory, B-101696," as follows:

"The above named man was paroled on 4-2-64 for a period of two years. He was returned to prison on 7-30-64 and at a parole violation hearing conducted on August 17, *he was found automatically guilty* of parole violation by reason of a conviction on 5-11-64 for receiving stolen property. He received a term of 90 days at the Detroit house of correction as a result of this conviction." (Emphasis ours.)

(2) Frank G. Schemanske, judge of the recorder's court, on January 25, 1965, certified the "concise statement of proceedings and facts in support of the application for leave to appeal," which statement reads:

"1. On May 11, 1964, Alton Mallory, defendant-appellant, stood charged and was convicted of the criminal offense of receiving and concealing stolen property under the value of $100 in the recorder's court of the city of Detroit, by the Honorable Frank G. Schemanske, judge of the recorder's court. Defendant was sentenced to 90 days in the Detroit house of correction, and the said 90 days have been served.

"2. Trial by jury had been waived. Defendant was not represented by counsel at the trial,

"3. On or about May 19, 1964, an attorney (on behalf of the defendant) made a motion for a new trial. The motion was withdrawn by the attorney on May 27, 1964, and never came on for a hearing. The 15-day period in which to make a motion for new trial in misdemeanor cases (as provided in Rule 26 of the recorder's court of the city of Detroit) expired on May 26, 1964.

"4. On September 25, 1964, defendant, *in propria persona,* made a motion for appointment of appellate counsel and for free transcript for appellate purposes.

"5. On October 29, 1964, defendant's motion was denied by Judge Schemanske for the reason 'that the case is already moot, since the sentence has been served.' "

(*3*) Defendant's January 27, 1965, affidavit (Court of Appeals) pursuant to GCR 1963, 806.3(3)(b), as follows:

"1. That he is the defendant and appellant in these proceedings.

"2. That although a motion for a new trial was made in the lower court by an attorney on May 19, 1964, said motion was withdrawn by the attorney without the permission of defendant-appellant and never came on for a hearing.

"3. That he is presently incarcerated in the State Prison of Southern Michigan, at Jackson, Michigan, for violation of parole. An automatic adjudication of guilt of that offense was made when he was convicted of the instant offense of receiving and concealing stolen property."

(*4*) The order of the Court of Appeals, dated March 2, 1965:

"It is ordered that the application for delayed appeal be, and the same is hereby denied, the ques-

tion presented therein being moot, the case of *People* v. *Pyrros,* 323 Mich 329 controlling therein."

Justice Dethmers, considering the question of "mootness," states:

"After the May 11, 1964, misdemeanor conviction, defendant was found guilty by the parole board of parole violation and, after service of his 90-day misdemeanor sentence, was remanded to State prison as a parole violator and is still there as provided by law, serving the remainder of his sentence for the 1962 felony conviction. * * *

"Defendant's misdemeanor conviction *automatically* brought about a finding by the parole board of parole violation or that, at least, that conviction was an element and factor in the parole violations charged against defendant and considered by the board in making its finding of parole violation. Accordingly, we consider the above cases cited by the people with respect to mootness inapt. Defendant's present incarceration may well be considered a consequence, in part at least, of this misdemeanor conviction. More to the point is *United States* v. *Morgan,* 346 US 502 (74 S Ct 247; 98 L ed 248), in which the United States Supreme Court said (pp 512, 513):

" 'Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties * * * As the power to remedy an invalid sentence exists, * * * respondent is entitled to an opportunity to attempt to show that this conviction was invalid.' " (Emphasis ours.)

Justice O'Hara writes:

"I do agree with Mr. Justice Dethmers that the appeal in this case is not dismissible as moot for the reasons he assigns and on the basis of the authority he cites."

I agree with Justices Dethmers and O'Hara.

The parole board rules and our decisions* authorize the board in finding that defendant was "automatically guilty of parole violation by reason of a conviction on 5-11-64 for receiving stolen property." The board does not have or exercise the right to pass appellate judgment on court decisions.

Defendant does not challenge the board's action, but asks for appellate review of the May 11, 1964, misdemeanor conviction that automatically placed him behind prison walls for a period that has not expired at the time I write this opinion.

We are confronted with a misdemeanor charge and a felony penalty, and the same reasons that justify a finding that the case is not moot also justify granting defendant's request to have counsel appointed for appeal.

Repeating the words of the United States Supreme Court in *United States* v. *Morgan, supra,* defendant "is entitled to an opportunity to attempt to show that this conviction was invalid."

I agree with Justice Dethmers' holding for reversal and remand.

Adams, J. (*concurring specially*). I concur with the 3d, 4th and 5th paragraphs of Justice Souris' opinion.   Canon 19 of the canons of judicial ethics deals with judicial opinions.  It reads in part:

"It is of high importance that judges constituting a court of last resort should use effort and self-restraint to promote solidarity of conclusion and the consequent influence of judicial decision."

In the opinion of the undersigned, the above sentence from Canon 19 is applicable here.

---

* *Canfield* v. *Commissioner of Pardons and Paroles* (1937), 280 Mich 305, 309; *Jurczyszyn* v. *Parole Board* (1947), 316 Mich 529.

T. M. Kavanagh, C.J., Dethmers, and Souris, JJ., concurred with Adams, J.

Black, J. (*dissenting*).  In the course of his special concurrence (*Gideon* v. *Wainwright* [March 18, 1963], 372 US 335 [83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733]); Mr. Justice Harlan wrote what appears immediately below.  No other Justice undertook to question these words (p 351):

"The special circumstances rule has been formally abandoned in capital cases, and the time has now come when it should be similarly abandoned in noncapital cases, at least as to offenses which, as the one involved here, carry the possibility of a substantial prison sentence.  (Whether the rule should extend to *all* criminal cases need not now be decided.)"[1]

The sole and controlling question before this inferior Court is whether it, distinguished from the Supreme Court of the United States, should "extend" the constraint of the Sixth Amendment to *"all* criminal cases."  I prefer as before to let the Supreme Court lead the way when it comes to ascertainment of what was required and so is required by some standing principle or provision appearing in the National Constitution; that Court having expressly refrained thus far from such ascertainment.  So much said, I stand by such Federal guidelines as are known rather than those which the civil liberties committee of the State Bar, appearing here *amicus*, confidently predicts are ahead for petty-case justice in every magisterial court of this land.

*First*: With its companion (*People* v. *Copeland*, 378 Mich 611) this case has plunged the Supreme

---

[1] The Justice, emphasizing "all," was speaking to the text of review of a conviction for felony which resulted in a sentence "to serve five years in the State prison."

Court of Michigan into another thorny thicket of supreme constitutional law; a thicket made the more spinous by importunate prodding on the part of the aforesaid committee.  Arriving as in *People* v. *Foster,* 377 Mich 233, with an issue made technically moot by completed service of a maximally imposed jail sentence, the committee insists that this Court should lead off by proclaiming that the right to counsel, provided as it is by the Sixth Amendment[2] extends to all cases of "petty offense," the accused person being indigent.

To the writer the committee is a little too ardent. Moreover, its predictive record is not sufficiently dependable for any such far-reaching proclamation by this Court.  See the committee's recent reliance upon the petitioner's presentation in *Schmerber* v. *California*[3] (45 MSBJ, No. 9, pp 24–26) and compare it with the Supreme Court's ruling that Schmerber had been denied no constitutional right as claimed (*Schmerber* v. *California* [June 20, 1966], 384 US 757 [86 S Ct 1826, 16 L ed 2d 908]).

Now this defendant's conviction was for an offense somewhat less than "petty."[4]  That being so, I cannot bring myself to join others in voting to overthrow the policy congress effected when the criminal justice act of 1964[5] was enacted, or to join in holding that that act failed to conform fully with Sixth Amendment assurances.  Surely this Court is or at least ought to be sated, by now, with these

---

[2] Also in identically premised words by the 1835, 1850, 1908, and 1963 Constitutions of Michigan (1835, art 1, § 10; 1850, art 6, § 28; 1908, art 2, § 19; 1963, art 1, § 20).

[3] Certiorari granted January 17, 1966; 382 US 971 (86 S Ct 532, 15 L ed 2d 464).

[4] Defendant Mallory was charged and convicted with having received stolen property "of the value of $100.00 or less," contrary to CLS 1961, § 750.535 (Stat Ann 1965 Cum Supp § 28.803).  He was sentenced to and did serve a term of 90 days in the Detroit House of Correction.  That was the maximum.  CL 1948, § 750.504 (Stat Ann 1954 Rev § 28.772).

[5] Public Law 88–455, 88th Cong., Aug. 20, 1964; 18 USCA § 3006A.

attempts "to outrun the Supreme Court of the United States."[6]

The Supreme Court has never gone so far as to say that the framers, debaters and adopters of the Sixth Amendment, intended that counsel and transcript should be provided at public expense for the indigent who has been charged with or convicted of petty offense as well as the indigent who has been charged with or convicted of felony or other serious offense. *Griffin* v. *Illinois,* 351 US 12 (76 S Ct 585, 100 L ed 891, 55 ALR2d 1055); *Douglas* v. *California,* 372 US 353 (83 S Ct 814, 9 L ed 2d 811); *Lane* v. *Brown,* 372 US 477 (83 S Ct 768, 9 L ed 2d 892) and *Draper* v. *Washington,* 372 US 487 (83 S Ct 774, 9 L ed 2d 899), speaking as they do of discrimination against the poor "on account of their poverty" in cases of conviction for murder, assault with a deadly weapon, armed robbery, et cetera, do not as presently contended support any such conclusion. Indeed, had any one of the cited cases ruled as thus claimed, then the constitutional infirmity of the presently discussed exception, made by the aforesaid criminal justice act, would stand forth for all to see.

---

6 The expression is that of Justice ADAMS. He wrote (*In re Apportionment of State Legislature—1964,* 372 Mich 418, 473):

"It [Justice SOURIS' interpretation] may well reflect the decision the United States Supreme Court will hand down any day now. When that day comes I will be pleased to join with him. Until it does, I do not conceive it to be the proper duty or function of this Court to attempt to outrun the Supreme Court of the United States."

These sensible sentiments seem to have been forgotten since April of 1964. See challenge and silence in *Muskegon Prosecuting Attorney, ex rel. Schaub,* v. *Klevering,* 377 Mich 666, 672. Yet it remains constitutionally true that this Supreme Court of Michigan is, so far as concerns Federal questions, a subordinate Court. Its duty is to stand fast in honor of currently applicable Federal guidelines; not to guess that the Federal Supreme Court will lay down some contrary new rule of Federal law for retrospective application. It is better, say I, that a subordinate court risk direct reversal than risk indictment and conviction for having predicted by a soothsayer's judgment what ultimately does not come to pass.

In this latest of civil liberties cases certain mutually assured Justices have placed unitary bet that the Supreme Court will, sooner or later, say that the National Constitution compels each of the States to bear the load of supplying counsel and all trappings of appeal where the accused or prisoner has been charged with or convicted of a "petty offense," and is indigent. For terse reply I suggest that if that guess proves out, then congress will have to amend—hastily—subsections (a) and (b) of aforesaid section 3006A. The two subsections exhibit the considered policy of congress (not retroactive by the way); a policy which, by presumption specially forceful in this State Court, validly limits the free counsel and other free benefits thereof to cases where the indigent defendant is charged with or convicted of felony or misdemeanor not constituting a "petty offense." To be precise:

The initial sentence of subsection (a) provides:

"Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for defendants charged with felonies or misdemeanors, *other than petty offenses as defined in section 1 of this title,* who are financially unable to obtain an adequate defense.";

and the initial sentence of subsection (b) pursues the same "petty offense" exception:

"In every criminal case in which the defendant is charged with a felony or a misdemeanor, *other than petty offense,* and appears without counsel, the United States commissioner or the court shall advise the defendant that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel." (Emphasis supplied by present writer.)

"Petty offense" has been defined, ever since the amendment of December 16, 1930 (see *Duke* v. *United States,* 301 US 492 [57 S Ct 835, 81 L ed 1243]), as one where the statutory penalty does not exceed imprisonment for a period of six months, or a fine of not more than $500, or both. Section 1 "of this title," to which (a) above refers, presently defines "petty offense" this way:

"(3) Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense." (18 USCA, § 1.)

So there is nothing new about the distinction congress has made and retained between felonies and serious misdemeanors on the one hand and petty offenses on the other. As said in *Duke* v. *United States, supra* at 494:

"The original section divides crimes into felonies and misdemeanors. The evident object of the proviso [defining "petty offenses"] was to bring about a subdivision of misdemeanors by creating a class of misdemeanors of minor gravity to be known as petty offenses; to be tried, as proposed by other legislation (which failed), by United States commissioners."

*Second:* Pressed upon us is section 20 of article 1 of the Constitution of 1963.[7] Pertinent to the charge against the defendant Mallory and his ensuing conviction, I am unable to find anything of present persuasiveness in that section, our question

---

[7] "Sec. 20. In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in all courts not of record; to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have the assistance of counsel for his defense; to have an appeal as a matter of right; and in courts of record, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."

being whether the 172-year-old constitutional phrase
"In every criminal prosecution" includes, by inten-
tion of the people voting in 1963, "prosecution" for
minor or petty offenses. The answer to that ques-
tion is the answer this Court has given before;[8]
that a constitutional provision is looked upon and
construed by the judiciary as the people understood
it at the time of debate and vote, having regard
for the "laws and usages" of that time. As said in
*People* v. *Harding,* 53 Mich 481, 485:

"Every constitution has a history of its own
which is likely to be more or less peculiar; and
unless interpreted in the light of this history, is
liable to be made to express purposes which were
never within the minds of the people in agreeing
to it. This the Court must keep in mind when called
upon to interpret it; for their duty is to enforce
the law which the people have made, and not
some other law which the words of the constitution
may possibly be made to express."

Now this Constitution of 1963 has "a history of
its own" so far as concerns the constitutional ex-
pression "criminal prosecution;" a history of words,
meanings and public comprehension going back to
the Sixth Amendment, and carrying from there
through our Constitutions of 1835, 1850, and 1908.
It is that the quoted expression has never been
understood generally, or by any judgment of the
Supreme Court of the United States, or by any
judgment of this Court, or by "any sense most
obvious to the common understanding," as includ-
ing within its compulsive scope *all* prosecutions for
*all* offenses cognizable in *all* of our courts. In-
stead something gratuitously new has arrived in
the seemingly prodigal minds of those who consti-

<hr/>

[8] See cases and quotations appearing in *Bacon* v. *Kent-Ottawa Metropolitan Water Authority,* 354 Mich 159, and *Lockwood* v. *Commissioner of Revenue,* 357 Mich 517, 565–570.

tute today's majority of the aforesaid committee; the idea that *every* indigent who is charged with violation of *any* penal law ought to have, at public expense, *all* of the rights enumerated below the mentioned constitutional expression and, accordingly, that the expression should be "extended" by judicial process right down the line so that the indigent jaywalker, simple trespasser, petty traffic violator, even the indigent expectorator upon the floor, platform, or steps of a passenger car or bus (see CL 1948, § 750.476 [Stat Ann 1954 Rev § 28.744]), is provided free counsel and free transcript—at public expense, of course.

Now if all the courts of this country are to be bound by any such extension, it would appear more appropriate that the extension be announced first by the Supreme Court; not by a hopelessly divided State Court the past and as yet unassailed decisions of which, consistent as they are with that State's legislative policy (PA 1963, No 132 [CL 1948, § 775.16 (Stat Ann 1965 Cum Supp § 28-.1253)], quoted post), hold that the various constitutional guaranties that are headed "In all criminal prosecutions" do not apply to those who are summoned into court as petty offenders.[9]

*Third:* Justice Souris contends by amended opinion that "We are not required in this case to consider whether *trial* counsel must be appointed to defend an indigent charged with a misdemeanor, or an offense otherwise described as 'petty,' or an offense

---

[9] See cases cited in 10 Words and Phrases, Criminal Prosecution, p 536 *et seq.* and 1966 pocket supp pp 176–178; also *In re Cox*, 129 Mich 635, holding that the constitutionally guaranteed right of trial by jury does not extend to prosecutions under local ordinances. At 637 the Court said:

"This Court has held that cases under municipal ordinances proper do not rise to the dignity of criminal proceedings, and that neither a writ of error nor exceptions before sentence would lie. (Citing cases.) In this connection, see *People* v. *Vinton*, 82 Mich 39, 45; *Village of Northville* v. *Westfall*, 75 Mich 603."

against a village or city ordinance." As to this see Justice O'HARA's rejoinder (p 607) and compare, post at page 595, the constitutional position taken by Justice SOURIS when the Court voted the amendments of Rule 785 (378 Mich xxxviii–xl) with that which now appears in the corresponding full paragraph of his opinion. The fact is that Mallory's appeal and Copeland's appeal turn exclusively upon the validity of their contention that counsel should—by constitutional force—have been provided immediately by the court before which they were called to account;[10] also that such was the exclusive basis upon which leave to appeal was granted simultaneously for both cases.

This is not all. The civil liberties committee has made doubly clear the purpose of both appeals. Refer to "Recommendation No. 4" made by the committee in its recent annual report, and to the committee's comment thereon (45 MSBJ, No 9, pp 24, 25). The recommendation:

"4. That the State Bar continue to recommend to the Supreme Court and the legislature that all necessary orders, rules and statutes be entered and enacted to guarantee:

(a) Effective representation in all criminal cases at all stages of trial and appeal for indigent defendants.

(b) Provision for adequate funds for investigative aids and other expenses incident to the adequate defense of the indigent.

(c) All reasonable and adequate aids to perfect an appeal for an indigent defendant, including trial

10 Both briefs (for Mallory and Copeland) declare the claimed constitutional right in these words:

"Whenever there is the possibility that an indigent defendant will be deprived of his liberty for as much as one day, he is entitled to be informed of his right to be provided with counsel and, moreover, to be provided with competent counsel, unless he *intelligently* waives such right."

transcripts or necessary parts thereof, including the indigent accused who waives preliminary examination without benefit of counsel.

(d) Adequate compensation for assigned counsel."

The comment:

"4. Recommendation No. 4 has been made on previous occasions. The committee feels that if an offense is so important that the accused can be deprived of his liberty for as much as one day if he is convicted, then the matter is of sufficient import to require the appointment of counsel where the accused is indigent. This past year there were pending in the Supreme Court of Michigan two cases involving the question of whether an indigent misdemeanant is entitled as a matter of right to the appointment of counsel. People *v.* Alton Mallory (No. 51,212) and People *v.* Larry Tyrone Copeland (No. 51,213). The committee, with the consent of the executive committee of the commissioners of the State Bar submitted *amicus* briefs urging that there was such a right."[11]

Repeated for emphasis is the fact that the only reason *all* members of the Court were finally persuaded to grant the application of defendants Mallory and Copeland, for direct review by this Court, was to bring up for early determination the constitutional question Justice Souris says is not here. That question is here. Two opinions at least will deal with it.

*Fourth:* The foregoing appeal to Michigan's constitutional history is fortified by something not mentioned in the briefs or in any contributed opinion save that of Justice O'Hara. Justice O'Hara's fully warranted criticism, of the Court's recent adoption of what to both of us are "unworkable" amendments

---

[11] This recommendation and comment was indorsed by the signatures of present "Of Counsel" for both appellants (Mallory and Copeland).

of GCR 1963, 785, suggests that some one ought to say openly on our record that this Court does not control the tax-limited purse strings of any public treasury; that the judiciary of Michigan is possessed of no power to perform in fact what those amendments—left unrescinded—will call for come January 1st, and that the extent as well as the cost of any such heady program is properly a matter for legislative consideration and determination.[12] Indeed, if one may speak as a citizen distinguished from a judicial position, it may well be said that the kind of money proposed to be spent on behalf of indigent petty offenders might better be devoted by the legislature to *preventive* law enforcement, the kind a State may obtain only by equipping enforcement agencies with the manpower and support they these days so sorely need.

Unless and until the legislature supplies that ever necessary wherewithal (as congress did in the criminal justice act), the mentioned amendments of GCR 1963, 785 will be confined to the more or less wholesale release of those who, being indigent, are charged with an inestimable number of petty offenses. Nay, it will mean more. There will be but spotty "prosecution" as against indigent petty offenders. Why should already discouraged peace officers apprehend such persons, knowing that the Supreme Court of the State will have rendered them practically *immune* from prosecution?

Does not someone wonder why, in the Federal system, the question of how and to what extent free counsel and auxiliary rights for indigents was left to congressional consideration and legislation? Is it not fully known that the beginning as well as future cost of such a program is so unascertainable

---

[12] See appendix for discussion of cost in conjunction with the report of the "Ad Hoc Committee" of the Judicial Conference of the United States.

and unpredictable that Congress was compelled to appropriate for the criminal justice act, not in the usual form of a fixed sum or sums but in this form (§ 3006A):

"(h) Appropriations. — There are authorized to be appropriated to the United States courts, out of any money in the treasury not otherwise appropriated, sums necessary to carry out the provisions of this section. When so specified in appropriation acts, such appropriations shall remain available until expended. Payments from such appropriations shall be made under the supervision of the director of the administrative office of the United States courts."?

Does not someone wonder how, also, this Court means to square, constitutionally, the mentioned amendments of Rule 785 with the legislative policy which appears in present section 16 of chapter 15 of our criminal code? The section (CL 1948, § 775.16), last amended by PA 1963, No 132 (Stat Ann 1965 Cum Supp § 28.1253):

"Sec. 16. Whenever any person charged with having committed any felony or misdemeanor *not cognizable by a justice of the peace or magistrate* and who appears before such justice of the peace or magistrate without counsel, and who shall not have waived examination upon the charge upon which he appears, such person shall be advised of his right to have counsel appointed for such examination, and if such person states that he is unable to procure counsel, the justice or magistrate shall notify the presiding judge of the circuit court in the jurisdiction of which the offense is alleged to have occurred, and upon proper showing the presiding judge shall appoint some attorney to conduct the accused's examination before a justice court or examining magistrate and to conduct the defense, and the attorney so appointed shall be entitled to

receive from the county treasurer on the certificate
of the presiding judge that such services have been
duly rendered, such an amount as the presiding
judge shall in his discretion deem reasonable com-
pensation for the services performed."[13]  (Emphasis
supplied by present writer.)

## SUMMARY OF NOTES MADE DURING AND SINCE ORAL ARGUMENT

1. Until the Supreme Court speaks otherwise,
I shall look upon the pertinent requirement of the
Sixth Amendment and of our Constitution as being
fully consistent with the petty offense exception
made by the criminal justice act.  Doing so, I follow
the view other subordinate courts have taken when
a Federal "forecast" is proposed.  References to
their actions in such regard may be found in foot-
notes appended below the following passage taken
from the 3-judge determination of *Moody* v. *Flowers*
(DC MD Ala), 256 Fed Supp 195, June 14, 1966 (p
200):

"It is not for us to forecast the likelihood that
the Supreme Court will ultimately extend the prin-
ciples of *Reynolds* v. *Sims,* 377 US 533 (84 S Ct 1362,
12 L ed 2d 506), to the tens of thousands of sub-

---

[13] Norris and Hammond refer to this section as being "The heart
of the assigned counsel system."  42 U of D Law Journal 397, p 407,
April 1965.  They go on to recommend (p 428):

"3. *Michigan General Rule* 785 should be amended to cover all
felonies and all misdemeanors punishable by confinement or imprison-
ment for *one year or more.* This is in accord with the present practice
of most of the circuits, particularly since the adoption of the as-
signed counsel system of 1963."

It is interesting to note that Professor Norris, "as a delegate to
Michigan's Constitutional Convention, was the author of the provi-
sion creating a constitutional right of appeal." (p 429.)  The pro-
vision thus authored is the same section 20 upon which, along with
the Sixth Amendment, Justice SOURIS relies for reversal.

Emphasis of the "one year or more" limitation, appearing in the
Norris and Hammond recommendation above, is also supplied by
the present writer.

ordinate political units of the States to which have been delegated some power to which the label 'legislative' may be attached. Some courts have essayed to do so, while others have been content to await the development of judicial standards in this comparatively uncharted area of constitutional law. A warning to make haste slowly may be read into refusal by the Supreme Court on two occasions to consider cases involving the contention that the Federal Constitution requires local governmental bodies below the State level be apportioned on a population basis."

The "two occasions" mentioned are *Glass* v. *Hancock Co. Election Comm.,* 378 US 558 (84 S Ct 1910, 12 L ed 2d 1035), and *Tedesco* v. *Bd. of Supervisors of Elections for the Parish of Orleans,* 339 US 940 (70 S Ct 797, 94 L ed 1357).

2. No one should assume that the constitutional issue which divides us was overlooked either by the judicial conference of the United States or congress when the senate and house considered and adopted the criminal justice act. The senate stood steadfast for the restriction to felonies and misdemeanors other than petty offenses; whereas "The house version of the bill would cover all cases, including petty offenses," with the house managers insisting that "The constitutional mandate of the Sixth Amendment is without doubt applicable to petty offenses." Having said that, the managers went on to yield. See 2 U.S. Code Cong. and Adm. News 1964, pp 3002, 3003.

3. The judgment for which the civil liberties committee moves is not only extreme and immoderate; it is directly invasive of the prerogative which is vested with the legislative branch of Michigan's government. The connected text of that proposed judgment should be exposed again and again that everyone may realize the colossal supererogation

thereof.   Here it is, copied from Justice SOURIS'
contributed opinion:

"Our Constitutions and the United States Supreme
Court's decisions cited compel the conclusion that
appellate counsel and trial transcript must be fur-
nished every indigent defendant entitled to an appeal
as a matter of right.  In this State that means every
indigent convicted 'in every criminal prosecution'
(Art 1, § 20, Const of 1963), without distinction
between those convicted of felonies, misdemeanors,
circuit court misdemeanors or offenses cognizable by
a justice of the peace."[14]

So Michigan is *required,* rather than *permitted,*
to provide for those charged under her laws with
petty offenses that which congress so far has re-
fused to supply for those charged under Federal
law with corresponding offenses.  Not with my vote.
I vote instead to affirm.

ADDENDUM (November 2, 1966):
The foregoing opinion was submitted to the other
Justices September 29th.  October 4th the Court
directed the Chief Justice to "announce publicly
that the amendment of GCR 1963, 785.3, made

---

[14] (September 29, 1966):  This is the way such connected text
reads at present.  When the Court's majority considered and adopted
the amendments of Rule 785 Justice O'HARA and the writer opposed
on August 24th, the connected text of such proposed judgment went
sled length, reading this way:

"Our constitutions and the United States Supreme Court's decisions
cited compel the conclusion that appellate counsel and trial transcript
must be furnished every indigent defendant entitled to an appeal as
a matter of right.  In this State that means every indigent convicted
'in every criminal prosecution' (Const 1963, art 1, § 20), without dis-
tinction between those convicted of felonies, misdemeanors, circuit
court misdemeanors, offenses cognizable by a justice of the peace
or offenses against village or city ordinances."

Wording the allegation of constitutional law either way, the resultant
question cannot be evaded.  It is whether any constitutional provi-
sion *requires* that Michigan provide—in the context of these Mallory-
Copeland appeals—*more* than her legislature already has by PA 1963,
No 132, amending CL 1948, § 775.16 (Stat Ann 1965 Cum Supp
§ 28.1253).

August 24, 1966, is being reconsidered in light of
objections made since publication." October 19th
Justice Souris substituted for this case a new
opinion for that which theretofore included the con-
textual and now deleted quotations appearing above
(pp 588 and 595). Another development of inter-
vening significance is the Supreme Court's denial
(October 17th; 385 US 907 [87 S Ct 207, 17 L ed 2d
137]) of certiorari to review *Winters* v. *Beck,* 239
Ark 1151 (397 SW2d 364).

In the *Winters Case* "an indigent Negro" was
charged with a 30-day imprisonable petty offense.
He was convicted without the aid of counsel (court-
proffered or otherwise) and sentenced ultimately
to nine and one-half months imprisonment.[15] The
ruling of the Supreme Court of Arkansas was (p
1152):

"On the strength of Ark Stat Ann § 43–1203
(Repl. 1964), the courts of this State have always
appointed attorneys to represent indigent defend-
ants in felony cases. Thousands of misdemeanor
cases are tried in the municipal courts of Pulaski
county annually. In most of these cases the defend-
ants are not represented by counsel. But peti-
tioner contends that on the strength of *Gideon* v.
*Wainwright,* 372 US 335 (83 S Ct 792, 9 L ed 2d
799), it is now the duty of the courts to appoint
attorneys for indigents in misdemeanor cases. We
do not so construe *Wainwright.* There, the court
was dealing with a felony case where the defendant
had been sentenced to five years in the penitentiary.
Here, the petitioner, Winters, had 30 days to take
an appeal to the circuit court. He did not appeal,
although the procedure for appealing from the
municipal court is very simple. The services of an
attorney are not required at all."

---

[15] On account of subsequent application of Arkansas' "dollar-a-day"
statute. As to this, see Justice Stewart's dissent from denial of
certiorari, 385 US at 907.

Now it is quite true that the Supreme Court's refusal to review this decision by Arkansas constitutes no precedent either way (*United States* v. *Carver,* 260 US 482 [43 S Ct 181, 67 L ed 361]). But it is equally true that such refusal is ink-fresh proof that the Supreme Court *has not yet said* and *is not yet ready to say* that the Sixth Amendment provides what Justice Souris and the aforesaid civil liberties committee aver in behalf of defendant Mallory.[16]

## *APPENDIX*

The "Report of the *ad hoc* committee to develop rules, procedures and guidelines for an assigned counsel system" makes up a part of the report of a special meeting of the judicial conference of the United States held January 13, 1965. The latter report was transmitted to the speaker of the house by Chief Justice Warren January 25, 1965 (House document No. 62, iii). The *ad hoc* report presents in detail the legislative history of the criminal justice act and discloses the participation of the judicial conference in the requisite implementation thereof. It notes that the act requires assignment of counsel at the level of the office of the United States commissioner and, consequentially, that "in order to protect the record, courts and commissioners will be less inclined to accept waivers of counsel by defendants who appear before them." Summarizing (p 92) the *ad hoc* report concludes:

"In any case, it seems certain that the criminal justice act will require in the future a very large

---

[16] (December 12, 1966). There can be little question about this now. December 5th last the Supreme Court denied certiorari to review petitioner De Joseph's conviction of the Connecticut misdemeanor of criminal nonsupport and consequent sentence to six months in jail. For the facts, see Justice Stewart's dissent from such denial with pointed reference to *Winters* v. *Beck. De Joseph* v. *Connecticut* (1966), 385 US 982 (87 S Ct 526, 17 L ed 2d 443, 444).

increase in the number of counsel assigned to indigent persons accused of crime in the Federal courts."

Bearing in mind that the committees of the judicial conference at the time were attempting to formulate plans for carrying out the provisions of the criminal justice act, it is significant that the conference finally approved a budget of $7,500,000 for the first year's operation, conceding (p 80): "Thus the budget request is more than twice the $3,500,000 cost figure submitted by the attorney general."

All this relates, of course, to performance of duty under legislation designed to aid indigents charged with *serious* crime distinguished from petty offenses. As for the latter, we find in Lee Silverstein's Defense of the Poor, Volume 1 (ABA Foundation 1965), that there really is no way as yet to guess the appropriational cost of providing counsel for petty misdemeanants. Mr. Silverstein examines the problem in chapter 8 and reports (p 123):

"It is difficult to estimate the number of persons charged with misdemeanors in the United States each year. Only a few States publish reports on misdemeanors, and even these are lacking in uniformity because of differences in definitions and methods of reporting. Table 34 shows that the number of misdemeanors, not counting motor vehicle offenses, is very much larger than the number of felonies. The ratio ranges from about 4 times the number of felonies in Iowa to about 30 times the number in New Hampshire. The 12 States shown in this table had approximately 35% of the population of the United States in 1960, and 35% of all felonies in 1962. If the number of misdemeanors in this group of States is projected over all the States, then there were about 4,470,000 misdemeanor defendants in the United States in 1962, not counting defendants in motor vehicle cases. At the present

time, allowing for motor vehicle cases and for in-
creases in misdemeanors since 1962, it seems fair
to say that about 5,000,000 persons a year are
charged with misdemeanors in the State courts."

SUPPLEMENTAL MEMORANDUM OF BLACK, J. The day
before this case was supposedly settled for signature
and release of opinions (that day was November
10th), Justice SOURIS caused to be delivered to the
undersigned 13 typed pages of additional changes
of the opinion which presently carries his name at
the masthead (*supra*, pp 560–577). Since the Court
that morning faced a full day of hearing and con-
ference upon docketed cases, and a final day of the
November session for conference and decision upon
a previously prepared judicial and administrative
agenda, the timing of the aforesaid delivery was such
that decision of People v. Mallory had to be held
up again, this time by the writer. As Michigan
lawyers interested in our doings have come to
know, it is necessary that one compare with con-
templative vigilance that which in quantity is ten-
dered at the last minute as and for "amendments"
of an opinion due for release. Witness Justice
SOURIS' mournful admission, presently quoted, that
he has "many times" signed an opinion "barely
scanned" by him. Now to proceed:

In these November 10th amendments I find a
highly personal suggestion that my judicial ethics
are not up to the daintily professed standards of
Justice SOURIS; a matter no *man* may let pass un-
noticed. I find also in those amendments more than
pertinent reason for full exposure of the whole
background of that incredible folly of August 24th
last; the arrant occasion when Justice SOURIS led
a majority of the Court into the unwarned adoption[1]

---

[1] No notice was given pursuant to GCR 1963, 933. No publication in
the State Bar Journal was made beforehand. And no pretense of

of that which, under the angry pressure of an aroused judicial and professional opinion, the Court has since been compelled to renounce as all of us cast about now for some means of paling the Court's visage. I refer of course to the Souris-proposed amendments of GCR 1963, 785 (378 Mich xxxviii–xl); the amendments which, had they gone into effect this coming month as then ordered, would have crippled—for all but nonindigent cases—the enforcement of every Michigan ordinance and statute the design of which was and now is the punishment of "misdemeanors of minor gravity."[2]

Before proceeding further the following must be recorded. In an effort to avoid the forthcoming outdoor wash of our highly personal linen, the writer vainly moved to strike from Justice Souris' said opinion all of the personal gratuities appearing therein. The impertinence referred to will be found

"finding of a need for immediate action" was then made or is made now.

[2] Consider, with forbearance, the Court's "Press Release" of October 6, 1966 (45 MSBJ, No. 10, p 33):

"The Supreme Court announced today, through Chief Justice THOMAS M. KAVANAGH, that the Court is reconsidering the amendment of GCR 1963, 785.3, made August 24, 1966, in light of the objections made since its publication. The rule refers to the question of appointment of counsel and other procedures in ordinance cases in justice of the peace and municipal courts. The Court will continue its reconsideration at its November 1966 conference;"

and then our most recent order, due at this writing for publication in the advance sheets and Michigan State Bar Journal:

"On Order of the Court dated November 16, 1966 (Chief Justice T. M. KAVANAGH and Justices DETHMERS and SOURIS dissenting), the effective date of amendments to GCR 1963, 785, appearing in volume 378 Michigan Reports, at pages xvii–xxii of part 3, Advance Sheets, is suspended until further notice. The bench and profession are advised that the Court has Rule 785 under consideration for further revision and that, until such revision is drafted and placed in effect, subrule 785.3, as it read prior to the amendments of August 24, 1966, shall continue to be applied, subject, however, to the requirements of CL 1948, § 775.16, as amended by PA 1963, No 132 (Stat Ann 1965 Cum Supp § 28.1253)."

on pages 561 and 562 *supra,* headed "In his current opinion Justice BLACK breaches that confidence." Had that motion received affirmative action this supplement would have been put back in briefcase for return to Port Huron and permanent suppression there.   However, the motion having failed, it is time to be off to the fair.

Justice SOURIS is undoubtedly right if, as I glean from his presently alleged concern for the privacy of "views expressed by judges of an appellate court while deliberating upon their decisions," he has come finally to belief that this Court should adopt firm rules of personal and really nonpartisan conduct for observance by Michigan Supreme Court Justices.   Sure it is that some but not all of us, seemingly forced by the fact of continued legislative failure to fully implement the so-called nonpartisan judicial amendment of 1939 (Const 1908 as amended, art 7, § 23; Const 1963, art 6, § 2), have not been able to eliminate either the outward appearance or the recorded appearance of typical party partisanship. So if this latest personal joust of two members of the highest Court of a State will result in the *adoption* and effective *enforcement* of comprehensively rigorous rules of Supreme Court conduct, applicable to *all* while they are outside as well as inside our alleged cloister of privacy, I indeed shall abide by them.   In the meantime I mean not to cringe before one supported by some others who alleges *on our record* that he conducts himself with ethical purity and that the undersigned does not. Nor do I intend to abide rules of ethical conduct three of the Brethren would set for Justice BLACK which they by their recorded action regard not as binding upon themselves.

I would examine openly a few publicly recorded instances of judicial doings for array with Justice Souris' assumption of the vestments of holiness. I

do not recall, for instance, nor can anyone else, that any member of this Court challenged the ethical conduct either of Justice Kelly or the undersigned when, the occasion being *Spoon-Shacket Company, Inc.,* v. *County of Oakland,* 356 Mich 151, 157, 173, each of us previously quoted—and then left in—matter in the other's opinion which was subsequently deleted or "changed." Nor was there any objection when the writer listed, in *Mosier* v. *Carney,* 376 Mich 532, 595, 596, our internal gyrations in that particular instance of fitfully irresolute overrulement. And especially do I recall that no one objected to the *now irrevocably recorded quotation of and reliance by* Justices Souris, Kavanagh *and* Smith *upon certain of the minutes of our January 12, 1966 conference:* a conference which preceded preparation of all but one of the several opinions of that most politically divisive case of all (*Badgley* v. *Secretary of State* [*In re Apportionment of State Legislature—1965–1966*], 377 Mich 396, 465, 466, 469, 470). Verily, the Justices must have an ethical rule of conduct for themselves, and another more prim for such others as have the effrontery to challenge what they pushed through August 24th last.[3] Whatever the controversial fact thereof, let it be known that when Justices Souris, Kavanagh and Smith thus overtly breached what our Brother refers to as the "privacy of our deliberations," the undersigned for one warmly welcomed that act. Had there been any lingering doubt regarding the "privacy of our deliberations" then, what the 3 Justices did at the time made wholesome precedent for more revelation publicly of what goes on within.

---

[3] The moral of an old fable comes to mind here; the fable of the lawyer, the farmer and the farmer's ox, aptly found in "The Partial Judge." For source reference, see Bartlett's Familiar Quotations (Morley's 1947 ed.), p 1139. It does make a difference whose ox is being gored.

The above is by no means all. Throughout the judicial history of the United States one may search in vain for evidence that any high court judge, speaking out publicly of a suggested legislative measure not yet before his court for judicial test, has gone so far as to give forth a flat declaration of constitutional invalidity of that measure. There is one exception. It was committed in Michigan last March.

The Detroit News (March 3, 1966), headlining "Souris says 'Stop-Frisk' Law is Unconstitutional," reported to the public (and to a manifestly startled profession):

"State Supreme Court Justice THEODORE SOURIS said last night that the proposed 'stop and frisk' law for the State is unconstitutional.     *     *     *

"Souris spoke at Grosse Pointe High School Annex Auditorium in a lecture series sponsored by the Grosse Pointe Democratic Club.

"The series, 'The Constitution and the citizen,' covers the next three Wednesdays. Other guest speakers will be Circuit Judges Horace W. Gilmore and Joseph A. Sullivan and Detroit attorneys Avern Cohn and Theodore Sachs."

I make no comment now on this business of constitutional opinions ahead of submission. The Saginaw News subsequently (March 13, 1966) provided all that so far is necessary:

"Justice THEODORE SOURIS a week or so ago gave a talk before Grosse Pointe Democrats in which he bluntly said that a proposed 'stop-and-frisk' proposal is unconstitutional.

"That's none of Justice SOURIS' business at this point in the game.

"The proposal had just been suggested. It is not being debated in the legislature. Most important it is not before the Supreme Court for study or opinion. Yet Justice SOURIS 'killed' it."

There is a silver lining in all this. Now that nigh to seven years will have elapsed since Justice Souris came to this bench by appointment,[4] it is something more than comforting to learn by his word, written unimpeachably on our official scroll in these waning days of December, that he too can and does err. Once the Justice was publicly blaming the Brethren for his "many" mistakes. See quotation below. Now the rest of us may relax a bit, reassured that *all* seated here are, after all, mere mortals; also that the last of Michigan's great nonpareils really did leave this bench when Justice Fellows died in harness July 16, 1929 (247 Mich iii).

As for such "many" mistakes it is not difficult to recall that our Brother, complaining at the time about this Court's burdensome workload, surprised the annual (1961) conference of Michigan judges at Dearborn with this "inside" information headlined "High Court 'Slipshod' in Work, Souris says" (Detroit News, September 28, 1961):

"What we are doing is dividing the cases eight ways, with the result that frequently the controlling decision is made by one justice with that decision receiving only cursory consideration by the seven others.

"I have many times signed my name to an opinion I have barely scanned and realized later that I had made a mistake. It makes you sick."[5]

One may well digress at this point to suggest that there must be a real and continuing danger in the

4 January 5, 1960; 358 Mich iii.

5 Now I for one will not admit that any indorsement of mine has been appended to *any* "barely scanned" opinion. Too many beartraps lurk in that kind of negligence. Nor have I been made sick distinguished from hindsight regretful on account of anything which, since January 1, 1956, has recorded my indorsement. I have on occasion conceded (on our record; not elsewhere) that some indorsements should have been qualified in some specific regard. The most recent example appears in *Currie* v. *Fiting*, 375 Mich 440 at 477, 478.

situation thus exposed at the Dearborn conference; a situation with respect to which this Court should have acted and now should act as soon as its personnel changes next month. There may indeed be a number of explosive time-bombs of hidden bad law ticking away in volumes 358, 359, 360 and 361 of Michigan Reports; the reports which necessarily contain the "many" opinions that made Justice Souris "sick." Those bombs should be ferreted out and disarmed immediately with the knowledgeable assistance of our Brother. He should know where those "many" mistakes are. As he doubtless will agree, any controlling opinion contained in those volumes, the effect of which made an apparently healthy Justice "sick" at the time, should receive correction by overrulement or *sua sponte* correction through a crash program; all else cast aside lest more lawyers and judges rely and act upon those opinions only to become "sick" themselves.

Now these quotations that are said to be a breach of confidence, an "implicit threat to the continued privacy of our deliberations," have not been released or exposed prior to decision day. Nor were they taken from any tentative "what do you think about this" memoranda, or from any probative draft such as we regularly circulate on white sheets. They came to us on our professionally-known "blues"; part and parcel of a constitutional "decision" to be released upon strength of whatever signatory support it might attract. Those blues had to be written against, with painstaking care, to avert if possible the kind of vote which the Court —mistakenly as all now agree—did record on August 24th. And they were challengingly before us, without amendment or declared prospect of withdrawal, when Justice Souris insisted that the Court vote

August 24th upon the aforesaid amendments of Rule 785.

To comprehend the "why" of our August 24th blunder the trial bench should have before it—and now will have before it—the complete conclusion of Justice SOURIS' aforesaid withdrawn opinion. See page 595, *infra*. And I cannot refrain from writing here that it is high time courts consider at greater length the "civil rights" of that great unnumbered multitude of law-abiding citizens and that constantly multiplying number of victims of today's fearsome crime wave. Everyone has civil rights; not just those who may be arrested and charged with crime or petty offense. This Rule 785 issue, bound up as it is with the Mallory and Copeland appeals, must continue to a Cannae-like showdown with all delicate perfume excluded from our internecive notes, opinions, and conversations.

So far as the writer is concerned there need be no misunderstanding of what has been, is now, and truly shall be. Everything turned in to the Court by him since January 1, 1956,—everything that is—has been written as if ultimately due for public examination. Right or wrong it may be quoted freely, any time. That is *my* ethical policy. And until we have rules of the kind outlined above, binding on *all* of us, it is going to stand. I conclude with these observations:

The Supreme Court of Michigan is not owned and possessed by the eight gentlemen who, berobed here in regal dignity, are seated as Justices for successively fleeting intervals of time. The Supreme Court of Michigan belongs to the people of that State. Its business is the people's business. And the more we conduct ourselves from within as well as without as if in an auditory glass bowl, the better will be our supposedly serviceable product.

So the undersigned is implicitly threatening (he is the only one of course) "the continued privacy of our deliberations upon pending appeals." So be it until the constitutional supervisor of Michigan's "one court of justice" goes about policing *all* of the member-supervisors thereof.

O'HARA, J. (*dissenting*). I agree with Mr. Justice DETHMERS that the appeal in this case is not dismissible as moot for the reasons he assigns and on the basis of the authority he cites.

I am not in agreement with the statement:

"These United States Supreme Court decisions, all involving felonies, may not necessarily be controlling of the question in the instant case relating to a misdemeanor."

Rather it is my position that they are not controlling for the somewhat obvious reason that in this State, by statute, felonies are not misdemeanors.

Thus, we are not mandated by any Federal case precedent to furnish indigent misdemeanants counsel at public expense.

However, in the interim between serving of Mr. Justice DETHMERS' opinion upon the other members of this Court and its release date, this Court, with Mr. Justice BLACK and myself dissenting, amended GCR 1963, 785 to include the furnishing of counsel to those charged with misdemeanors upon conviction for which the accused could be jailed for 90 days or more.

The vast majority of misdemeanors in this State are punishable by a jail sentence up to and including 90 days. These offenses are cognizable by justices of the peace and municipal courts. This latter becomes important because of an additional requirement in GCR 785. It provides in .4:

"(1) Right to Timely Appeal. Hereafter, immediately upon sentencing, the court shall advise the defendant in open court that he is entitled as a matter of constitutional right to appellate review of his conviction and that, if defendant is financially unable to provide counsel to perfect such appeal, the court will appoint counsel for him and will furnish counsel with such portions of the trial transcript counsel requires to prepare postconviction motions and to perfect an appeal."

So long as GCR 1963, 785 was concerned with felonies, as it was prior to the amendment to take effect January 1, 1967,[1] no practical difficulty attended the enforcement of GCR 1963, 785.4(1). However, when misdemeanors, for which the accused could be jailed for 90 days or more, was added to GCR 1963, 785.3 and the right to such "portion of the trial transcript" as appellate counsel required became applicable to prosecutions in justices' courts and municipal courts, a practically unworkable situation was created. In countless justices' courts and municipal courts throughout Michigan, court reporters are not available. Neither do I believe can they be made available at whatever expenditure of public funds. There simply aren't that many. I take judicial notice of our regional judicial conferences of the past year, which were to some substantial degree devoted to the problem of obtaining sufficient court reporters for the circuit courts of the State and the recorder's court of Detroit.

I follow, therefore, my dissent from the adoption of the amendment to GCR 1963, 785, which includes in its terms misdemeanors, conviction for which the accused could be jailed for 90 days or more, with this dissent from Mr. Justice Dethmers' opinion

[1] By subsequent action, this Court postponed the effective date of this Rule and has published a proposed revised version thereof under GCR 1963, 933 inviting further comment by bench and bar.

that in all such foregoing prosecutions the accused is entitled to appellate counsel at public expense.

If the purist view is to be followed, then in every prosecution for an offense upon conviction for which the accused can be jailed at all, he has a right to counsel at public expense. I see nothing more sacred about 90 days than 10 days, or 1 day. If, however, it be said that this is a "practical matter" and that undiluted theory cannot obtain because the Bar simply can't furnish that many lawyers (to say nothing of reporters and the yet unmentioned amount of public expenditure), then I say a misdemeanor, upon conviction for which the accused can be jailed for 90 days or more, is a most unfortunate place to draw the line of "practicality."

I believe it the better part of wisdom to follow the Federal classification of offenses as provided in the Federal criminal justice act to which Mr. Justice Dethmers makes reference in his opinion. This congressional enactment was preceded by study and research. It reflects, as I think it should, the legislative recognition of the necessity of representation of indigent defendants, within the limits of practicality. I therefore maintain my opposition to GCR 1963, 785.3 as proposed for adoption as of January 1, 1967.[2] I would recognize the "petty offense" classification as is done in the Federal act and provide counsel for the indigent accused of any misdemeanor except those "for which the penalty does not exceed imprisonment for a period of six months, or a fine of not more than five hundred dollars or both." (Federal criminal justice act, 18 USCA § 1.)

Specifically, I agree with Mr. Justice Black in his statement:

"Until the Supreme Court speaks otherwise, I shall look upon the pertinent requirement of the

---

[2] See footnote 1.

Sixth Amendment and of our Constitution as being fully consistent with the petty offense exception made by the criminal justice act."

Despite the fact that the issue in this case is the appointment of appellate counsel only, I think the matter of appointment of trial and appellate counsel under GCR 1963, 785 are inextricably interwoven. In practical effect they cannot be treated separately. We would promote a high-stake judicial poker game at public expense to await the outcome of a trial for a misdemeanor where the accused is not furnished counsel and then provide him with appellate counsel and a transcript, or a portion thereof, and thus set in motion the machinery of appeal. What is even more incredible to me is to allow any of the courts of original jurisdiction over this class of offense to accept a plea of guilty without furnishing counsel, and then upon acceptance of such plea advise the pleader that he has an absolute right to appellate counsel and a transcript of the proceedings attendant the acceptance of his plea. We can't surely say to the counties of Michigan, this Court will not order you to supply indigents accused of misdemeanors coming within the rule *trial* counsel, but you must furnish to them appellate counsel and a transcript or portion thereof at public expense. So to do is to put the publicly-paid counsel cart before the horse.

The scholarly opinion of Mr. Justice SOURIS restates the obligation of those States which grant *criminal* appeals of right to afford "the indigent as adequate and effective appellate review as that given appellants with funds" under the equality clause of the Fourteenth Amendment.[3]

---

[3] *Draper* v. *Washington* (1963), 372 US 487 (83 S Ct 774, 9 L ed 2d 899).

This is settled law. It is not settled law in my view that the same obligation is imposed where the conviction is for a petty offense as defined in the Federal criminal justice act.

I would affirm the trial judge.

BRENNAN, J., took no part in the decision of this case.